**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| J. PATRICK COLLINS, *et al.*, | |
| Plaintiffs, | |
| v. | Civil Action No. 4:16-CV-03113 |
| THE FEDERAL HOUSING FINANCE AGENCY, *et al.*, | |
| Defendants. | |

**MEMORANDUM OF DEFENDANTS FEDERAL HOUSING FINANCE AGENCY
AS CONSERVATOR FOR FANNIE MAE AND FREDDIE MAC AND FHFA
DIRECTOR MELVIN L. WATT IN OPPOSITION TO PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT AND IN SUPPORT OF DEFENDANTS' CROSS-
MOTION FOR SUMMARY JUDGMENT ON CONSTITUTIONAL CLAIM**

## TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY OF THE ARGUMENT ........................................... 1

NATURE AND STAGE OF THE PROCEEDING ............................................................ 2

STATEMENT OF THE ISSUE AND STANDARD OF REVIEW .................................... 2

ARGUMENT ...................................................................................................................... 3

I.   THE COURT NEED NOT DECIDE PLAINTIFFS' CONSTITUTIONAL CLAIM
     BECAUSE IT WOULD NOT INVALIDATE THE THIRD AMENDMENT ............................. 3

    A.   Past Agency Actions Are Not Subject to Post Hoc
       Invalidation Due to Removal Restrictions ..................................................... 5

    B.   FHFA's Approval of the Third Amendment In Its Capacity as
       Conservator Was Not An Executive Function ............................................... 9

    C.   The Third Amendment Was Approved By An FHFA Acting
       Director, Whose Authority to Act in That Role Was Not
       Protected From Revocation By the President ............................................. 12

    D.   Plaintiffs' Allegations That the Agency Action Challenged in
       This Case Was Taken Jointly with Treasury Further
       Demonstrate the Irrelevance of Their Separation-of-Powers
       Theory ......................................................................................................... 15

II.  PLAINTIFFS' CONSTITUTIONAL CHALLENGE TO FHFA'S STRUCTURE IS
     WHOLLY WITHOUT MERIT ......................................................................................... 16

    A.   Plaintiffs Fail to Demonstrate That FHFA's Structure
       Impedes the President's Ability to Perform His Constitutional
       Duties.......................................................................................................... 17

    B.   FHFA's Structure Follows An Established Model Consistent
       With the Constitution ................................................................................. 23

CONCLUSION ................................................................................................................ 25

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Auction Co. v. FDIC*,
   132 F.3d 746 (D.C. Cir. 1997) ................................................................. 11

*In re Burnett*,
   635 F.3d 169 (5th Cir. 2011) ................................................................... 13

*CFPB v. ITT Educ. Servs., Inc.*,
   No. 1:14-cv-292, 2015 WL 1013508 (S.D. Ind. Mar. 6, 2015) ................ 17, 18, 21, 23

*CFPB v. Morgan Drexen, Inc.*,
   60 F. Supp. 3d 1082 (C.D. Cal. 2014) ........................................... 17, 21, 23

*Comm. for Monetary Reform v. Bd. of Gov. of Fed. Reserve Sys.*,
   766 F.2d 538 (D.C. Cir. 1985) .............................................................. 4, 15

*D.R. Horton, Inc. v. NLRB*,
   737 F.3d 344 (5th Cir. 2013) ..................................................................... 8

*DaimlerChrysler Corp. v. Cuno*,
   547 U.S. 332 (2006) .................................................................................. 4

*Dep't of Transp. v. Ass'n of Am. Railroads*,
   135 S. Ct. 1225 (2015) ............................................................................ 11

*Doe v. Tangipahoa Par. Sch. Bd.*,
   494 F.3d 494 (5th Cir. 2007) ................................................................... 15

*Dresser-Rand Co. v. NLRB*,
   576 F. App'x 332 (5th Cir. 2014) .............................................................. 7

*Faulk v. Union Pac. R.R. Co.*,
   449 F. App'x 357 (5th Cir. 2011) .............................................................. 3

*FEC v. NRA Political Victory Fund*,
   6 F.3d 821 (D.C. Cir. 1993) .................................................................. 7, 15

*Free Enter. Fund v. PCAOB*,
   561 U.S. 477 (2010) .......................................................................... *passim*

*Free Enter. Fund v. PCAOB*,
    537 F.3d 667 (D.C. Cir. 2008) (Kavanaugh, J., dissenting) ........................................ 24

*Henderson v. Stalder*,
    287 F.3d 374 (5th Cir. 2002) ........................................................................................ 4

*IBC, Inc. v. Copyright Royalty Bd.*,
    684 F.3d 1332 (D.C. Cir. 2012) ..................................................................................... 7

*Morrison v. Olson*,
    487 U.S. 654 (1988) ................................................................................................ 19, 22

*Nguyen v. United States*,
    539 U.S. 69 (2003) .......................................................................................................... 7

*Noel Canning v. NLRB*,
    705 F.3d 490 (D.C. Cir. 2013), *aff'd*, 134 S. Ct. 2550 (2014)...................................... 7

*PHH Corp. v. CFPB*,
    839 F.3d 1 (D.C. Cir. 2016),
    *vacated and reh'g en banc granted*,
    2017 WL 631740 (D.C. Cir. Feb. 16, 2017 ......................................................... 17, 18

*Rostker v. Goldberg*,
    453 U.S. 57 (1981) .................................................................................................... 2, 18

*Ryder v. United States*,
    515 U.S. 177 (1995) .................................................................................................... 7, 8

*SW Gen., Inc. v. NLRB*,
    796 F.3d 67 (D.C. Cir. 2015) ..................................................................................... 8, 9

*United States v. Beszborn*,
    21 F.3d 62 (5th Cir. 1994)............................................................................................ 10

*United States v. Guzek*,
    527 F.2d 552 (8th Cir. 1975) ....................................................................................... 13

*Williams v. INS*,
    114 F.3d 82 (5th Cir. 1997) ......................................................................................... 23

## Constitutional Provisions and Statutes

U.S. CONST., Art. II .................................................................................................*passim*

U.S. CONST., Art. III................................................................................................ 4, 5, 15

5 U.S.C. § 1211 ................................................................................................... 25

12 U.S.C. § 1 ....................................................................................................... 24

12 U.S.C. § 2 ....................................................................................................... 24

12 U.S.C. § 242 ................................................................................................... 22

12 U.S.C. § 4512 ...................................................................................... 12, 13, 15

12 U.S.C. § 4617 ........................................................................................... 10, 23

12 U.S.C. § 5491 ................................................................................................. 25

28 U.S.C. § 2401 ................................................................................................. 10

42 U.S.C. § 902 ............................................................................................. 22, 25

**Other Authorities**

Fed. R. Civ. P. 12.................................................................................................. 2

Fed. R. Civ. P. 56.................................................................................................. 2

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

Plaintiffs seek a summary judgment declaring that "FHFA's structure violates the separation of powers" based on a novel theory that relies almost entirely on a single recent decision by a split D.C. Circuit panel regarding a different agency.  While that outlier decision was, in any event, inapplicable to the FHFA, the full D.C. Circuit has vacated the panel's judgment in that case and set it for rehearing en banc, leaving Plaintiffs' constitutional challenge to the manner in which Congress structured the FHFA bereft of even a kernel of possible support.

Plaintiffs attack Congress' considered judgment to establish FHFA as an independent agency headed by a Director removable for cause.  That governance structure, however, accords with longstanding precedent and the settled understanding of all three Branches that independent agencies do not run afoul of the Constitution, whether headed by a multi-member board or single director.

Although the constitutional question Plaintiffs ask the Court to resolve is not close or difficult, the Court need not reach it at all because, for a variety of independent reasons, a resolution in Plaintiffs' favor would not call into question the validity of the Third Amendment in any event.  Accordingly, Count IV essentially invites an academic exercise that the Court need not entertain.

Regardless of which path the Court takes to resolve Count IV, the one thing that is quite clear is that Plaintiffs are not entitled to summary judgment.  On the contrary, the Court should enter summary judgment for FHFA on this novel and unsupported claim.

1

## NATURE AND STAGE OF THE PROCEEDING

Plaintiffs filed their Complaint for Declaratory and Injunctive Relief on October 20, 2016, naming as defendants FHFA as Conservator of Fannie Mae and Freddie Mac, the Department of the Treasury, and the Director of FHFA and Secretary of Treasury in their official capacities.  On January 9, 2017, FHFA and the Treasury Department each moved to dismiss all counts of the Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  On February 9, 2017, concurrently with opposing the motions to dismiss, Plaintiffs moved for summary judgment on Count IV of their Complaint, which asserts that "HERA violates the Constitution's separation of powers" by "making FHFA's head a single Director rather than a multi-member Board and eliminating the President's power to remove the Director at will."  Compl. ¶ 185.  FHFA now opposes Plaintiffs' motion for summary judgment and cross-moves for summary judgment in FHFA's favor on Count IV.

## STATEMENT OF THE ISSUE AND STANDARD OF REVIEW

The issues are (1) whether Plaintiffs' claim attacking HERA's "cause" limitation on removal of the FHFA Director, if successful, would invalidate the Third Amendment, and (2) whether HERA's "cause" limitation on removal of the Director is consistent with the separation of powers, and more specifically Article II of the U.S. Constitution.  Both present pure questions of law that the Court may decide on motions for summary judgment.  Fed. R. Civ. P. 56(a).  Statutes enacted by Congress enjoy a presumption of constitutionality.  *See*, *e.g.*, *Rostker v. Goldberg*, 453 U.S. 57, 64 (1981).

2

**ARGUMENT**

**I.    THE COURT NEED NOT DECIDE PLAINTIFFS' CONSTITUTIONAL CLAIM BECAUSE IT WOULD NOT INVALIDATE THE THIRD AMENDMENT**

For a host of independent reasons, the abstract constitutional challenge Plaintiffs have brought to FHFA's structure is simply irrelevant to the validity of the Third Amendment. The Court could therefore grant summary judgment for FHFA and deny summary judgment for Plaintiffs on this basis alone, without reaching the merits. *See, e.g.*, *Faulk v. Union Pac. R.R. Co.*, 449 F. App'x 357, 363 (5th Cir. 2011) ("Courts avoid reaching constitutional questions in advance of the necessity of deciding them." (internal quotation marks omitted)).

First, even where, unlike here, restrictions on the President's power to remove an executive official are held to be constitutionally problematic, the remedy is to invalidate the removal restrictions going forward, not to annul past actions by that official. Moreover, it is undisputed that FHFA entered into the Third Amendment in its capacity as Conservator, a distinctive role whereby FHFA steps into the shoes of the financial institution that does not include the type of executive functions that Article II of the Constitution vests in the President. The Third Amendment, further, was the decision of an *Acting* Director of FHFA, whose designation to act in that capacity was freely revocable and not subject to the statutory condition of "cause" for removal that protects a Senate-confirmed Director and is the focus of Count IV. Finally, Plaintiffs' separation-of-powers claim presupposes that greater Presidential control over FHFA might have led to FHFA deciding *not* to enter into the Third Amendment, but that is belied by Plaintiffs'

3

own allegations that Treasury (a Cabinet Department headed by a Secretary removable at will) and the White House fully supported the Third Amendment.

These issues undermine Plaintiffs' Article III standing with respect to Count IV. To have standing to challenge the constitutionality of a statute, a plaintiff must show both that his alleged injury-in-fact is "fairly traceable" to the unconstitutional provision and that it "will be redressed in the event that statute is enjoined and/or declared unconstitutional." *Henderson v. Stalder*, 287 F.3d 374, 379 (5th Cir. 2002). Here, there is no causal link by which the Third Amendment, the sole agency action Plaintiffs alleged caused them injury, is traceable to restrictions on the President's ability to remove a Senate-confirmed FHFA Director, and a holding that those restrictions are unconstitutional would not redress Plaintiffs' alleged injury because it would not affect the Third Amendment. *See id.* at 381 (finding no standing where "complained of injury would not be redressed" by a declaration of unconstitutionality). "[A] plaintiff must demonstrate standing for each claim he seeks to press," *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006), and Plaintiffs' failure to do so for Count IV would make any decision by this Court on the separation-of-powers issue an advisory opinion precluded by Article III.[1]

---

[1]   While some cases recognize a more general form of "standing to raise constitutional questions of separation of powers with respect to an agency designated to adjudicate [parties'] rights," that type of standing is only for parties "directly subject to the authority of the agency, whether such authority is regulatory, administrative, or adjudicative in nature," not for those who simply claim to be "substantially affected" by an agency action. *Comm. for Monetary Reform v. Bd. of Gov. of Fed. Reserve Sys.*, 766 F.2d 538,

Footnote continued on next page

Whether the problem is viewed as a lack of Article III standing or simply as a failure by Plaintiffs to demonstrate entitlement to vacatur of the Third Amendment, each of the following issues independently obviates the need for the Court to reach the merits of Count IV.

### A.    Past Agency Actions Are Not Subject to Post Hoc Invalidation Due to Removal Restrictions

As previously addressed in FHFA's motion to dismiss, when restrictions on the President's ability to remove an officer are found to impinge on the President's Article II powers, the remedy is simply to drop prospectively those removal restrictions, not to retroactively invalidate past actions taken by that officer.  Mem. of FHFA in Support of Mot. to Dismiss at 41-42 (Doc. # 24) ("FHFA MTD").  That remedy would do nothing to help Plaintiffs here, who complain not of any ongoing or anticipated future action by FHFA but rather about a discrete historical action taken four and a half years ago.

The prospective focus of relief is exemplified by the Supreme Court's decision in *Free Enter. Fund v. PCAOB*, 561 U.S. 477 (2010), the leading and most recent case on removal restrictions.  While the Court there held that an unusual set of limitations on removal of PCAOB members was inconsistent with the separation of powers, the Court rejected the position that those limitations rendered "all power and authority exercised by

---

Footnote continued from previous page

543 (D.C. Cir. 1985).  Plaintiffs here are not regulated by FHFA or otherwise "directly subject to [its] authority"; rather, they claim that their economic interests were affected by a contract amendment FHFA entered into in its capacity as Conservator, and so must satisfy the usual Article III requirements of injury in fact, traceability, and redressability.

[the PCAOB] in violation of the Constitution." 561 U.S. at 508 (internal quotation marks omitted). Quite the contrary, it was only the discrete removal restrictions, not the very "existence of the Board," that "violate[d] the separation of powers." *Id.* at 508-09. Thus, excising the removal restrictions "would have no effect . . . on the validity of any officer's continuance in office," but would merely "affect[] the conditions under which those officers might someday be removed." *Id.* at 508. The judgment through which the district court in *Free Enterprise Fund* ultimately implemented the Supreme Court's decision accordingly specified that other than striking specific statutory clauses restricting removal of PCAOB members, "[a]ll relief not specifically granted by this judgment is hereby DENIED." Appendix, Ex. 1 at A4.[2]

The Supreme Court reached the merits of the constitutional issue in *Free Enterprise Fund*, and the relief was meaningful there, because the plaintiff accounting firm was registered with the PCAOB, subject to its continuing jurisdiction, inspections, and regulation, and undergoing an ongoing investigation. Thus, the plaintiff had a tangible continuing interest in ensuring the agency regulating and investigating it would conform to constitutional requirements. *See supra* note 1 (noting authority for standing

---

[2] Plaintiffs say the only reason no past agency action was vacated in *Free Enterprise Fund* was that "there was nothing to vacate." Pls.' Mem. in Opp. to Defs. Mots. to Dismiss and in Supp. of Pls.' Mot. for S.J. at 69 (ECF No. 32) ("Pls.' Mem."). Not so. As Plaintiffs themselves emphasize, the plaintiff accounting firm "challenged an ongoing investigation." *Id.* (citing *Free Enter. Fund*, 561 U.S. at 487). The Court (or the lower courts) could have vacated the opening of the investigation the plaintiff was challenging, and the fact that they did not confirms that relief for unconstitutional removal restrictions is forward-looking in nature.

of regulated entities on this basis).  Here, in contrast, Plaintiffs are not regulated by FHFA, not subject to its continuing jurisdiction or regulation, and their injury stems purely from a historical action that would not be undone if the Court were to hold the removal restriction in HERA unconstitutional.

Plaintiffs contend that any past action by an agency "structured in violation of the separation of powers" is "*ultra vires* and must be vacated."  Pls.' Mem. at 68.  But the cases they cite invalidated action by individuals held to be unconstitutionally appointed and wrongly serving.[3]  Nothing in the reasoning of those cases suggests that action by an official who *is lawfully serving* becomes void on account of statutory removal protection enjoyed by that official.  *See Free Enter. Fund*, 561 U.S. at 508-09 (contrasting Appointments Clause challenges, which potentially go to whether the existence of the agency violates the separation of powers, with removal restrictions, which do not).

Even when a putative officer is found to have *lacked authority to serve and act at all* (which is not the situation here), courts are loath to overturn past agency actions on that ground.  As confirmed by Plaintiffs' own cases, the *de facto* officer doctrine "confers

---

[3]  *See*, *e.g.*, *Noel Canning v. NLRB*, 705 F.3d 490 (D.C. Cir. 2013), *aff'd*, 134 S. Ct. 2550 (2014) (NLRB adjudicatory decisions rendered by a board consisting mostly of members held to be invalidly appointed and invalidly serving); *Dresser-Rand Co. v. NLRB*, 576 F. App'x 332, 333 (5th Cir. 2014) (same); *Nguyen v. United States*, 539 U.S. 69 (2003) (criminal appeal heard by panel that included non-Article III judge); *Ryder v. United States*, 515 U.S. 177 (1995) (criminal appeal heard by invalidly appointed military judges); *IBC, Inc. v. Copyright Royalty Bd.*, 684 F.3d 1332 (D.C. Cir. 2012) (copyright board members appointed in violation of Appointments Clause); *FEC v. NRA Political Victory Fund*, 6 F.3d 821 (D.C. Cir. 1993) (election board members appointed by Congress in violation of Appointments Clause).

validity upon acts performed by a person acting under the color of official title even though it is later discovered that the legality of that person's appointment or election to office is deficient." *Ryder v. United States*, 515 U.S. 177, 180 (1995).  Such protection helps avoid the risk of "chaos" and "multiple and repetitive suits challenging every action taken by every official whose claim to office could be open to question."  *Id.* at 180 (internal quotation marks omitted).

In the cases cited by Plaintiffs, criminal defendants and respondents in NLRB and FEC proceedings could maintain constitutional challenges despite the *de facto* officer doctrine because "one who makes a *timely* challenge to the constitutional validity of the appointment of an officer who *adjudicates* his case is entitled to a decision on the merits of the question and whatever relief may be appropriate if a violation indeed occurred." *Id.* at 182-83 (emphasis added).  However, that does not give anyone claiming to be injured by agency action open-ended license to raise defects in appointments years into the future.  In the D.C. Circuit, for example, to avoid the *de facto* officer doctrine, "[f]irst, the plaintiff must bring his action at or around the time that the challenged government action is taken," and "[s]econd, the plaintiff must show that the agency or department involved has had reasonable notice under all the circumstances."  *SW Gen., Inc. v. NLRB*, 796 F.3d 67, 81 (D.C. Cir. 2015) (quoting *Andrade v. Lauer*, 729 F.2d 1475, 1499 (D.C. Cir. 1984)).  Although the Fifth Circuit's *de facto* officer jurisprudence is less developed, it too has endorsed use of the doctrine to shield agency action from untimely challenges. *D.R. Horton, Inc. v. NLRB*, 737 F.3d 344, 352-53 (5th Cir. 2013).

Again, this case does not even present an issue regarding the ability of an officer to serve in the first place, and *Free Enterprise Fund* makes clear that in the very different context of removal restrictions, vacatur of past agency actions simply is not the appropriate remedy.  But if the Court were to apply the *de facto* officer doctrine here by analogy (after all, the requirements for vacating agency action based on removal restrictions surely cannot be *less* rigorous than when the attack strikes at the ability of the officer to serve at all), there is no way Plaintiffs meet the requirements to avoid it.  Far from "bring[ing] [their] action at or around the time that the challenged government action [was] taken," *SW Gen.*, 796 F.3d at 81, they sued in October 2016 challenging an agency action in August 2012.  Nor have Plaintiffs "show[n] that [FHFA] had reasonable notice under all the circumstances" (*id.* at 81:  they did not raise this issue with FHFA before suing, nor did any of nearly 40 prior plaintiffs who have litigated Third Amendment challenges since 2013 make any removal-restrictions claim.

In sum, under any potentially relevant analysis — whether *Free Enterprise Fund*'s remedial approach or the *de facto* officer doctrine — Plaintiffs' removal-restrictions claim, even if meritorious, would not provide a route to invalidation of the Third Amendment.

## B.    FHFA's Approval of the Third Amendment In Its Capacity as Conservator Was Not An Executive Function

Plaintiffs' separation-of-powers argument also is irrelevant to the validity of the Third Amendment because it is undisputed that FHFA entered into the Third Amendment not in its capacity as a regulatory agency, but rather as Conservator.  Indeed, the Third

Amendment was signed by FHFA as Conservator. Plaintiffs acknowledge that "HERA assigns FHFA separate roles as supervisor and regulator, on the one hand, and as conservator or receiver, on the other hand." Pls.' Mem. at 58. The actions of financial institution conservators — a role in which FHFA "stands in the shoes" of the Enterprises, *United States v. Beszborn*, 21 F.3d 62, 68 (5th Cir. 1994) — are not the type of executive functions over which Article II requires that the President have some level of supervision and control. FHFA MTD at 42-44.

In response, Plaintiffs point out that "FHFA acted in its *regulatory* capacity when it appointed itself as conservator" in 2008, as if that somehow nullifies anything and everything the Conservator has done in the near decade since that appointment. Pls.' Mem. at 70 (emphasis in original). But that argument rewrites their claim. The allegation in Count IV is that "the Net Worth Sweep was adopted by FHFA when it was headed by a single person who was not removable by the President at will." Compl. ¶ 189. That adoption occurred in 2012, some four years after the conservatorship began, and was carried out by FHFA acting as Conservator. Count IV says nothing about the Third Amendment being invalid on account of the antecedent placement into conservatorship being invalid. Such a claim nine years later would be time-barred anyway, *see* 12 U.S.C. § 4617(a)(5); 28 U.S.C. § 2401, and strains credulity given the staggeringly broad implications it would have.

Plaintiffs also contend that whether an agency performs executive functions or some other type of functions is irrelevant to whether Article II requires Presidential control. Pls.' Mem. at 70-71 n.30. However, Plaintiffs' claim derives entirely from

Article II's vesting of "[t]he *executive* Power" in the President and its mandate that he "take Care that the Laws be faithfully *executed*." Compl. ¶ 184 (emphasis added). Plaintiffs characterize *Department of Transportation v. Association of American Railroads*, 135 S. Ct. 1225 (2015), as holding that the nature of functions performed is irrelevant, but that case did not involve any challenge to removal restrictions — or any challenge at all under Article II.

Plaintiffs survey cases that have treated receivers and conservators as the United States for various non-constitutional purposes, such as sovereign immunity, statutes of limitation, the Tucker Act, and venue. Pls.' Mem. at 71-72 & n.31. Those cases simply reflect that whether a federal conservator "should be treated as the United States depends on the context." *Auction Co. v. FDIC*, 132 F.3d 746, 748 (D.C. Cir. 1997). Here, the context is Article II of the Constitution, and nothing in the sovereign immunity, statute of limitations, or other cases relied upon by Plaintiffs suggests that Article II requires the President to have control and supervision over the activities of a conservator who steps into the shoes of a financial institution.[4]

---

[4]   Plaintiffs' additional argument that "Congressional pronouncements . . . are not dispositive of [a defendant's] status as a governmental entity for purposes of separation of powers analysis under the Constitution," Pls.' Mem. at 71 (internal quotation marks omitted), is misplaced because FHFA is not relying on any "Congressional pronouncement" of non-governmental status. Rather, FHFA relies on the inherent character of the activities and functions of a conservator, which are distinct from the executive powers Article II of the Constitution addresses.

C.   **The Third Amendment Was Approved By An FHFA Acting Director, Whose Authority to Act in That Role Was Not Protected From Revocation By the President**

Count IV is premised on the notion that HERA violates the Constitution "[b]y making FHFA's head a single Director rather than a multi-member Board and eliminating the President's power to remove the Director at will" and that the Third Amendment is invalid because it was adopted at a time when those provisions of HERA were operative. Compl. ¶¶ 185, 189.  But the only provision of HERA that "eliminate[s] the President's power to remove the Director at will" is 12 U.S.C. § 4512(b)(2), which by its terms applies only to permanent, Senate-confirmed Directors.  As Plaintiffs now acknowledge, at the time of the Third Amendment FHFA was headed by an *Acting* Director, the parameters of whose service are not governed not by § 4512(b)(2), but by a different part of the statute, § 4512(f).  Section 4512(f) simply provides that the President may designate a deputy director of FHFA to serve temporarily as Director, and places no limits on the President's ability to revoke such a designation.

In response, Plaintiffs try to rewrite both their claim and the statute itself.  They first try to convert their claim into what would appear to be a generalized attack on civil service protections, stating that in addition to serving temporarily as Acting Director, Mr. DeMarco was a career civil servant.  But Count IV alleges solely that "*HERA* violates the Constitution's separation of powers," not that the civil service laws do so.  Compl. ¶ 185 (emphasis added).  Many senior career civil servants are eligible to serve as acting officers, and Plaintiffs' new argument would implausibly create a constitutional cloud over everything such officials do in those capacities.  In any event, the civil service laws

would only have protected Mr. DeMarco from his underlying post as Deputy Director of Housing Mission and Goals, not from having his designation to temporarily serve as Acting Director revoked.

Plaintiffs also contend that the "for cause" removal standard set forth in § 4512(b)(2) for permanent, Senate-confirmed Directors should be deemed engrafted onto § 4512(f).  But removal presupposes an antecedent appointment; there is no need to "remove" an Acting Director because he is not appointed to that office in the first place, only designated to act temporarily in that capacity.  Moreover, "'[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposefully in the disparate inclusion or exclusion.'"  *In re Burnett*, 635 F.3d 169, 172 (5th Cir. 2011) (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)).  Plaintiffs offer no reason to disregard that well-established canon here.[5]

Plaintiffs further complain that the President's "choice of acting Director" was "restrict[ed] . . . to a list of individuals previously selected by the Director."  Pls.' Mem. at 74.  This is yet another new claim.  Count IV complains solely of restrictions on the President's ability to *remove* a *Director*, not his ability to *designate* an *acting Director*.

---

[5] Plaintiffs rely on *United States v. Guzek*, 527 F.2d 552, 560 (8th Cir. 1975), a case reflecting that acting agency heads "succeed[] to all the powers of the office."  But "the powers of the office" are substantive actions and authorities (*e.g.*, in *Gurek,* the Attorney General's power to designate lower officials to apply for wiretaps), not the circumstances under which one can be removed from office.  As noted, removal is not even a concept that applies to acting officers because they are not appointed to such posts in the first place, but rather act pursuant to temporary and freely revocable designations.

13

Plaintiffs cite no authority for the odd suggestion that the sensible approach of having had one of the most experienced and senior leaders of the agency temporarily acting as Director somehow transgressed constitutional requirements.

Plaintiffs warn that FHFA's interpretation would enable Presidents to undermine FHFA's independence by "simply declining to nominate" a Director "indefinitely." Pls.' Mem. at 75. However, courts are not at liberty to write additional terms into a statute based on mere speculation that other branches of government might not fulfill their statutory obligations. Plaintiffs' argument wrongly assumes that avoiding a "cause" removal standard is the overarching consideration driving a President's nomination decisions, and the very materials they cite show that President Obama did nominate a permanent Director but the nomination was blocked by the Senate.

Finally, Plaintiffs cite a news story for the proposition that "the Obama Administration did not believe that the President had the legal authority to remove Mr. DeMarco except for cause." Pls.' Mem. at 75. The Court must analyze the issues based on the text of the statute and other judicially cognizable authority, not on news articles' statements about beliefs as to the law attributed to officials of other agencies as the reporter distills them. Plaintiffs also rely on a letter from then-Treasury Secretary Geithner, but that letter refers to the Acting Director's authority to make decisions about principal reduction, while saying nothing about the President's power to revoke his designation of Mr. DeMarco as Acting Director.

14

**D.** **Plaintiffs' Allegations That the Agency Action Challenged in This Case Was Taken Jointly with Treasury Further Demonstrate the Irrelevance of Their Separation-of-Powers Theory**

Even assuming *arguendo* that the "for cause" removal provision in § 4512(b)(2) somehow applied to Mr. DeMarco's service as Acting Director (which it did not), Plaintiffs' separation-of-powers theory collapses under the weight of their own allegations about the agency action in this case.

The necessary premise of Count IV is that absent protection from removal, FHFA would not have (or at least might not have) entered into the Third Amendment. After all, Article III standing requires that Plaintiffs' injury be "traceable" to the asserted constitutional violation. *See*, *e.g.*, *Doe v. Tangipahoa Par. Sch. Bd.*, 494 F.3d 494, 496 (5th Cir. 2007); *Comm. for Monetary Reform*, 766 F.2d at 542-43 (holding that plaintiffs lacked standing to bring separation-of-powers challenge to the Fed's structure because they failed to show their alleged injury was traceable to the alleged structural defect).[6]

However, Plaintiffs' own description of the agency action they challenge affirmatively rules out any basis to believe the challenged action would have been (or even might have been) any different absent any removal protection that, *arguendo*, may

_____

[6]   As mentioned above, *see supra* note 1, a litigant directly subject to regulatory or adjudicative authority of an agency, *e.g.*, the target of an agency enforcement action, is not necessarily required to specifically prove traceability in the sense of "receiv[ing] less favorable treatment than he would have if the agency were lawfully constituted and otherwise authorized to discharge its functions." *NRA Political Fund*, 6 F.3d at 824 (internal quotation marks omitted). That principle does not help Plaintiffs here because, like the plaintiffs who lacked standing in *Committee in Monetary Reform*, they are neither the target of any enforcement action nor otherwise "directly subject to the governmental authority" of FHFA. *Comm. for Monetary Reform*, 766 F.2d at 543.

have applied to the Acting Director.  The Third Amendment was a contract amendment between FHFA as Conservator acting on behalf of Fannie Mae and Freddie Mac, and the Treasury Department, a Cabinet agency whose Secretary is removable by the President at will and whose structure Plaintiffs do not allege is any way inconsistent with the separation of powers.  Plaintiffs allege that Treasury fully supported the Third Amendment and that it "reflects joint FHFA-Treasury action."  Pls.' Mem. at 54.  The Complaint lumps FHFA and Treasury together under the plural "Agencies" over fifty times in alleging the conduct Plaintiffs challenge.  And Plaintiffs contend that a "senior White House official" was instrumental in the process that led to the Third Amendment. *See* Compl. ¶¶ 19, 107; Pls.' Mem. at 9.

When Plaintiffs challenge what they characterize as "joint" action by two "sister" agencies (Pls.' Mem. at 54), one of which is indisputably headed by an officer removable by the President at will, there is simply no basis to suppose any removal protection that may have applied to an acting head of the other agency had any effect on the "joint" decision to take the action.  Quite the opposite, and all the more so where Plaintiffs affirmatively allege that the Administration fully supported the action.  This is yet another reason the Court need not reach the merits of Plaintiffs' constitutional claim.

## II.  PLAINTIFFS' CONSTITUTIONAL CHALLENGE TO FHFA'S STRUCTURE IS WHOLLY WITHOUT MERIT

If the Court nevertheless opts to reach the merits of the constitutional question Plaintiffs ask it to decide, Supreme Court precedent and the principles underlying

separation-of-powers jurisprudence guide the way to an easy answer to that question: FHFA's structure readily comports with constitutional requirements.

### A.   Plaintiffs Fail to Demonstrate That FHFA's Structure Impedes the President's Ability to Perform His Constitutional Duties

Plaintiffs' argument in support of Count IV relies almost entirely on a single authority, cited fourteen times in as many pages:  the October 11, 2016 decision of a fractured panel of the D.C. Circuit in *PHH Corp. v. CFPB*, 839 F.3d 1 (D.C. Cir. 2016). On February 16, 2017, the full D.C. Circuit vacated the panel's judgment in *PHH* and ordered that the case will be reheard *en banc*.  *See* Appendix, Ex. 2 at A5.  Consequently, the *PHH* panel opinion has no precedential or even persuasive force and nothing to contribute to analysis of the issues in this case.  As the record now stands, each of the two extant judicial decisions that have considered separation-of-powers challenges to the CFPB's structure has soundly rejected those challenges.  *CFPB v. ITT Educ. Servs., Inc.*, No. 1:14-cv-292, 2015 WL 1013508, at *7-*14 & n.10 (S.D. Ind. Mar. 6, 2015); *CFPB v. Morgan Drexen, Inc.*, 60 F. Supp. 3d 1082, 1086-89 (C.D. Cal. 2014).

It is long settled that Congress is not prohibited from creating independent agencies run by officers removable only for cause.  *See Free Enter. Fund*, 561 U.S. at 483 (citing *Humphrey's Ex'r v. United States*, 295 U.S. 602 (1935)).  It is also beyond dispute that Congress may structure agencies to be headed by a single officer.  Plaintiffs' position in this case is that those two aspects are somehow mutually exclusive, *i.e.*, that Congress is forbidden from attaching removal protection to an office unless that office will share leadership with a number of other officers also having removal protection.  No

17

authority supports that novel and illogical thesis, and it finds no purchase in the principles that animate separation-of-powers jurisprudence.  With the *PHH* panel opinion out of the picture, only one case cited by Plaintiffs invalidated removal restrictions at all, *Free Enterprise Fund*.  But the outcome in *Free Enterprise Fund* stemmed from a highly unusual structure that has nothing to do with FHFA, and the Court's analysis both on the merits and on remedy supports FHFA, not Plaintiffs.  *See supra* at 5-6, *infra* at 20-21.

Lacking authority, Plaintiffs resort to inventing tests and standards that are not only nowhere to be found in case law, but affirmatively refuted by it.  For example, Plaintiffs insist that "[r]estrictions on the President's removal power are presumptively unconstitutional."  Pls.' Mem. at 62.  But as the court in *ITT* pointed out, that approach "inverts the premise from which [courts] must start in exercising judicial review over Congress:  the presumption of constitutionality."  *ITT*, 2015 WL 1013508, at *13; *accord Rostker v. Goldberg*, 453 U.S. 57, 64 (1981).  "Where Congress has acted, a challenge to the constitutionality of its enactments must show not merely that the legislature has taken a path not before explicitly sanctioned by the judicial branch, but that it has affirmatively violated constitutional principles."  *ITT*, 2015 WL 1013508, at *13.

Plaintiffs then splice together language from *Free Enterprise Fund* to portray the Supreme Court as establishing a "special circumstances" test for justifying removal restrictions:  "When a court is asked 'to consider a new situation not yet encountered by the [Supreme] Court,' there must be special 'circumstances' to justify 'restrict[ing the President] in his ability to remove' an officer."  Pls.' Mem. at 62 (purporting to quote *Free Enter. Fund*, 561 U.S. at 483-84).  The full passage from which Plaintiffs quote,

18

however, shows that in no sense did the Court enunciate a "special circumstances" test; it simply articulated the question presented in that case — whether two layers of removal protection for PCAOB members infringed on the President's powers — and observed that the Court had not previously been confronted with that structure.[7]

The proper analysis of the constitutionality of FHFA's structure involves neither a backwards presumption of *un*constitutionality, nor a non-existent "special circumstances" test.  Instead, "the real question is whether the removal restrictions are of such a nature that they impede the President's ability to perform his constitutional duty." *Morrison v. Olson*, 487 U.S. 654, 691 (1988).  Or, put another way, whether "the President's need to control the exercise of [the official's] discretion is so central to the functioning of the Executive Branch as to require as a matter of constitutional law that the [official] be terminable at will by the President." *Id.* at 691-92.  Plaintiffs do not even attempt to answer those questions.  Instead, Plaintiffs assume that any factual distinction from a prior case where the Supreme Court has upheld removal restrictions automatically compels invalidation here.  But it is not enough simply to identify a difference; Plaintiffs must show why that difference has a substantive impact and crosses the line into impeding the President's ability to carry out his Article II responsibilities.

---

[7]  "We are asked, however, to consider a new situation not yet encountered by the Court. The question is whether these separate layers of protection may be combined. May the President be restricted in his ability to remove a principal officer, who is in turn restricted in his ability to remove an inferior officer, even though that inferior officer determines the policy and enforces the laws of the United States?"  *Free Enter. Fund*, 561 U.S. at 483-84.

Here, again, the Supreme Court's decision in *Free Enterprise Fund* illustrates the proper inquiry. As noted, the Court there dealt with a structure in which PCAOB members enjoyed two layers of removal protection. Specifically, PCAOB members were removable by the SEC only "for good cause shown," defined as three narrow circumstances, while the Commissioners of the SEC in turn were themselves removable only for inefficiency, neglect of duty, or malfeasance in office. *Free Enter. Fund*, 561 U.S. at 486. While the Court held that structure did not comport with the separation of powers, the reason for that conclusion was not simply that the structure was new or unusual or did not precisely match the facts of any prior case. Rather, the Court engaged in a specific analysis of *how* and *why* the double layers resulted in concrete *additional* encroachment on Presidential power beyond that inherent in the independent agency model long upheld by the courts.

In particular, the Court found that "[t]he Act before us does something quite different" from structures approved in previous cases, and "[t]he added layer of tenure protection makes a difference." *Id.* at 495. With just one layer (*i.e.*, only the SEC commissioners protected from removal), "the Commission could remove a Board member at any time, and therefore would be fully responsible for what the Board does." *Id.* "The President could then hold the Commission to account for its supervision of the Board, to the same extent that he may hold the Commission to account for everything else it does." *Id.* at 495-96. However, "[a] second level of tenure protection *changes the nature* of the President's review" and "does not merely add to the Board's independence, *but transforms it*." *Id.* at 496 (emphasis added). "Neither the President, nor anyone

directly responsible to him, nor even an officer whose conduct he may review only for good cause, has full control over the Board." *Id.*

That sort of analysis is entirely missing from Plaintiffs' argument in this case: they never explain how or why Congress's choice to have FHFA led by a single Director, an established legislative practice, changes the nature of the President's review, transforms FHFA's independence, or otherwise impairs the President's performance of his constitutional duties. The notion that the President would find it more difficult to supervise a single individual removable for cause than a board composed of numerous individuals who are each removable for cause is unconvincing at best, backwards at worst. If anything, the nature of multi-member boards may well lead to "a diffusion of accountability" that is in tension with Article II's emphasis on "a clear and effective chain of command." *Free Enter. Fund*, 561 U.S. at 497-98. As the court in *Morgan Drexen* explained in rejecting a similar challenge to the CFPB,

> It is no more difficult for the President to assure that the Director of the CFPB is competently performing his statutory responsibilities than it was for the President to oversee the leadership of the FTC at the time of *Humphrey's Executor*. In fact, if the President had needed to fully revamp the leadership of the FTC at that time, he would have been required to [effect] five separate for cause removals, while only one is required in order to change the leadership of the CFPB.

60 F. Supp. 3d at 1088 (internal quotation marks and citation omitted); *accord ITT*, 2015 WL 1013508, at *14.

The only rationale Plaintiffs offer for a supposed constitutional preference for multi-member independent agencies is that they "better protect individual liberty because they do not concentrate power in the hands of any one individual, must necessarily

21

account for multiple viewpoints, tend to make decisions that are less extreme, and better resist capture by interest groups." Pls.' Mem. at 65. Such policy judgments about the merits of collective versus individual decision-making have nothing to do with whether the structure "impede[s] the President's ability to perform his constitutional duty," the relevant issue under Article II. *Morrison*, 487 U.S. at 691. Plaintiffs bring no claim under the Bill of Rights, and a perceived infringement on "individual liberty" is not a basis for invalidating an agency's structure under Article II absent some concrete encroachment on Presidential power. Article II is concerned with whether the President has adequate oversight of the Executive Branch, not whether agencies within the Executive Branch have "internal checks" (Pls.' Mem. at 67).

Plaintiffs place great weight on the size and importance of the housing finance sector affected by FHFA's actions. *See* Pls.' Mem. at 63, 66. However, Plaintiffs cite no authority that separation-of-powers analysis turns on the importance of an agency to the economy at large, and even Plaintiffs seem to acknowledge that the issue does not depend on "the agency's relative importance in national life." *Id.* at 66. The Federal Reserve Board is independent despite monetary policy's profound impact on the American economy, 12 U.S.C. § 242, and the independent Social Security Administration oversees disbursement of hundreds of billions of dollars of retirement and other benefits to tens of millions of Americans every year, 42 U.S.C. § 902(a)(3). When the Supreme Court analyzed whether restrictions on the removal of PCAOB members infringed on the President's Article II powers, it focused not on the significance of the accounting industry to the economy, but rather engaged in a close examination of specific executive powers

conferred on the PCAOB by statute.  *See Free Enter. Fund*, 561 U.S. at 485-86.  That is yet another analysis absent from Plaintiffs' submission here.

Plaintiffs also imply that their claim is somehow bolstered by Congress's decision to limit judicial review of certain FHFA actions through provisions such as 12 U.S.C. § 4617(f), but again fail to explain why that provision implicates any Article II concerns. Pls.' Mem. at 67.  As the *Morgan Drexen* court observed, "Congress has the authority to entirely preclude judicial review of agency actions, at least where there is no constitutional challenge at issue."  60 F. Supp. 3d at 1091-92 n.5; *accord Williams v. INS*, 114 F.3d 82, 83 (5th Cir. 1997).  Plaintiffs offer no theory of how Congress's decision to prevent litigative interference with the Conservator's operations interferes with the President's ability to execute the laws and oversee the Executive Branch.

### B.    FHFA's Structure Follows An Established Model Consistent With the Constitution

Plaintiffs further contend that FHFA's structure is constitutionally suspect because it is supposedly "without precedent not only in the United States Reports but also the annals of American history."  Pls.' Mem. at 64.  But that assertion is both irrelevant and erroneous.  It is irrelevant because it "proceeds from the mistaken premise that that which is not specifically approved by precedent is forbidden."  *ITT*, 2015 WL 1013508, at *11.

It is erroneous because as discussed in FHFA's motion to dismiss, a single director removable for cause is consistent with a venerable model Congress adopted a century and a half ago for one of the first financial institution regulators, the Comptroller of the Currency, and carried forward ever since.   FHFA MTD at 36, 39.   As Plaintiffs

acknowledge, the Comptroller holds office "for a term of five years unless sooner removed by the President, *upon reasons* to be communicated by him to the Senate." 12 U.S.C. § 2 (emphasis added).  The phrase "upon reasons" in the Comptroller's statute contemplates that, like "for cause" in HERA, a basis must exist for the action taken.  That plain meaning is supported both by case law around the time the statute was enacted, *Case of Dist. Atty. of U.S.*, 7 F. Cas. 731, 737 (E.D. Pa. 1868) (identifying the creation of the Comptroller of the Currency as a departure from prior practice of allowing "removals at the mere will of the President," that office being "the only one" at the time for which the President had to state "reasons" to remove the incumbent), and more recent historical surveys, *Free Enter. Fund v. PCAOB*, 537 F.3d 667, 713 & n.27 (D.C. Cir. 2008) (Kavanaugh, J., dissenting) (National Bank Act "limit[ed] Lincoln's power to remove the Comptroller of the Currency") (internal quotation marks omitted).  This independence is consistent with the OCC statute's provision that while the Comptroller operates under the "general direction" of the Secretary of the Treasury, the Secretary "may not delay or prevent the issuance of any rule or the promulgation of any regulation by the Comptroller of the Currency, and may not intervene in any matter or proceeding before the Comptroller of the Currency (including agency enforcement actions), unless otherwise specifically provided by law."  12 U.S.C. § 1(b)(1).

Plaintiffs are left trying to write off the independent OCC as "a single historical anomaly."  Pls.' Mem. at 64.  But an agency that has stood at the vanguard of financial institution regulation for over 150 years and whose structure has remained intact throughout can hardly be dismissed so easily.  The Social Security Administration, Office

of Special Counsel, and Consumer Financial Protection Bureau are additional examples of independent agencies with single heads not removable by the President at will.  *See* 42 U.S.C. § 902(a)(3); 5 U.S.C. § 1211(b); 12 U.S.C. § 5491(c)(3).

Congress followed the model it first established in 1864 when it enacted HERA creating FHFA against the backdrop of an economic crisis.  Plaintiffs have failed to establish that anything in Article II or separation-of-powers jurisprudence proscribed Congress from making that reasonable legislative judgment, which comported with longstanding precedent and the settled understanding of all three branches of government that independent agencies are constitutionally permissible and appropriate.  If the Court reaches the issue, the Court should uphold FHFA's structure and reject Plaintiffs' novel claim on the merits.

## CONCLUSION

For the foregoing reasons, FHFA respectfully requests that the Court deny Plaintiffs' motion for summary judgment on Count IV, grant FHFA's cross-motion for summary judgment on Count IV, and enter final judgment dismissing Count IV.

Dated: February 27, 2017

Respectfully submitted,

*/s/ Thad T. Dameris*
Thad T. Dameris
S.D. Texas Bar No. 7667
Texas Bar No. 05345700
Thad.Dameris@apks.com
ARNOLD & PORTER KAYE SCHOLER LLP
700 Louisiana Street, Suite 1600
Houston, TX 77002-2755
Telephone: (713) 576-2402
Facsimile:  (713) 576-2499

Howard N. Cayne
D.C. Bar No. 331306, *admitted pro hac vice*
Howard.Cayne@apks.com
Asim Varma
D.C. Bar No. 426364, *admitted pro hac vice*
Asim.Varma@apks.com
Robert J. Katerberg
D.C. Bar No. 466325, *admitted pro hac vice*
Robert.Katerberg@apks.com
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue NW
Washington, D.C.  20001
Telephone: (202) 942-5000
Facsimile: (202) 942-5999

*Attorney for Defendants Federal Housing Finance Agency and Director Melvin L. Watt*

26

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon the parties to this action by serving a copy upon each party listed below on February 27, 2017, by the Electronic Filing System.

Chad Flores
Owen J. McGovern
Parth S. Gejji
BECK REDDEN LLP
1221 McKinney St., Suite 4500
Houston, TX 77010

*Attorneys for Plaintiffs*

/s/ Thad T. Dameris
Thad T. Dameris

27