**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| J. PATRICK COLLINS, *et al.*,<br><br>                Plaintiffs,<br><br><br>v.<br><br><br>THE FEDERAL HOUSING FINANCE<br>AGENCY, *et al.*,<br><br>                Defendants. | Civil Action No. 4:16-cv-03113 |

## REPLY MEMORANDUM OF THE DEPARTMENT OF THE TREASURY AND STEVEN MNUCHIN IN SUPPORT OF THEIR MOTION TO DISMISS

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................ 1

ARGUMENT ..................................................................................... 3

**I.  HERA Forecloses Plaintiffs' Attempt to Restrain The Actions of The Conservator** ............................................................................. **3**

    A.  HERA Forbids Claims for Equitable Relief for Actions Taken by FHFA as the Conservator of the GSEs ............................................ 3

    B.  Section 4617(f) Also Deprives the Court of Jurisdiction Over Plaintiffs' Claims Against the Conservator's Counter-Party, Treasury ............. 6

**II. Even If There Were Jurisdiction, Plaintiffs' Claims Against Treasury Would Fail as a Matter of Law** ................................................... **9**

    A.  Treasury Did Not Exceed Its Authority Under HERA Because the Third Amendment Did Not Effect a "Purchase" of "Obligations or Other Securities." ............................................................. 9

    B.  HERA Does Not Impose Fiduciary Duties on Treasury. ................... 13

    C.  Treasury Is Not a Controlling Shareholder Under State Law ............. 15

    D.  Recent Legislation Confirms That Treasury and FHFA Acted Within the Scope of Their Authority Under HERA ................................ 16

**III. HERA'S Shareholder Rights Provision Bars Plaintiffs' Claims** ............ **18**

    A.  Plaintiffs' Claims Are Derivative. ........................................ 19

    B.  Principles of Federal Law Underscore the Conclusion That Plaintiffs' Claims Are Derivative. .................................................... 22

**IV.  Plaintiffs' Attempts to Escape the Issue Preclusive Effect of Perry Capital Are Unavailing** ......................................................... **23**

CONCLUSION ................................................................................ 25

## TABLE OF AUTHORITIES

**CASES**

*Alexander v. Sandoval,*
    532 U.S. 275 (2001) ................................................................................ 18

*Am. Airways Charters Inc. v. Regan,*
    746 F.2d 865 (D.C. Cir. 1984) ............................................................... 23

*Arduini v. Hart,*
    774 F.3d 6228 (9th Cir. 2014) ............................................................... 25

*Block v. Cmty. Nutrition Inst.,*
    467 U.S. 340 (1984) .................................................................................. 6

*Canderm Pharmacal, Ltd. v. Elder Pharm., Inc.,*
    862 F.2d 597 (6th Cir. 1988) ................................................................. 23

*Cede & Co. v. Technicolor, Inc.,*
    634 A.2d. 345 (Del. 1993) ...................................................................... 15

*Cobell v. Norton,*
    240 F.3d 1081 (D.C. Cir. 2001) ............................................................. 14

*Cottrell v. Duke,*
    737 F.3d 1238 (8th Cir. 2013) ............................................................... 25

*Dittmer Properties, L.P. v. FDIC,*
    708 F.3d 1011 (8th Cir. 2013) ................................................................. 8

*El-Shifa Pharm. Indus. Co. v. United States,*
    607 F.3d 836 (D.C. Cir. 2010) ............................................................... 13

*Franchise Tax Bd. v. Alcan Aluminum Ltd.,*
    493 U.S. 331 (1990) ................................................................................ 23

*Gentile v. Rossette,*
    906 A.2d 91 (Del. 2006) ................................................................... 20, 21

*Gradient OC Master, Ltd v. NBC Universal, Inc.,*
    930 A.2d 104 (Del. Ch. 2007) ............................................................... 21

*Hancock v. Train,*
    426 U.S. 167 (1976) ................................................................................... 14

*Haven Bd. of Educ. v. Bell,*
    456 U.S. 512 (1982) ................................................................................... 17

*Heckler v. Chaney,*
    470 U.S. 821 (1985) ................................................................................... 22

*Hindes v. FDIC,*
    137 F.3d 148 (3d Cir. 1998) ........................................................................ 8

*In re J.P. Morgan Chase & Co. S'holder Litig.,*
    906 A.2d 766 (Del. 2006) .......................................................................... 20

*In re Sonus Networks, Inc, S'holder Derivative Litig.,*
    499 F.3d 47 (1st Cir. 2007) ....................................................................... 25

*Indus. & Fin. Markets Ass'n v. Commodity Futures Trading Comm'n,*
    67 F. Supp. 3d 373 (D.D.C. 2014) ............................................................ 23

*James Stewart & Co. v. Sadrakula,*
    309 U.S. 94 (1940) ..................................................................................... 14

*Leon Cnty., Fla. v. FHFA,*
    816 F. Supp. 2d 1205 (N.D. Fla. 2011), *aff'd*, 700 F.3d 1273 (11th Cir. 2012) ............ 4

*LNV Corp. v. Outsource Serv. Mgmt., LLC,*
    No. CIV 13-1926 JNE/LIB, 2014 WL 834977 (D. Minn. Mar. 4, 2014) ...................... 8

*NAF Holdings, LLC v. Li & Fung (Trading) Ltd.,*
    118 A.3d 175 (Del. 2015) .......................................................................... 21

*Pac. Coast Dairy v. Dep't of Agric. of Cal.,*
    318 U.S. 285 (1943) ................................................................................... 14

*Parsch v. Massey,*
    72 Va. Cir. 121 (2006) ............................................................................... 19

*Perry Capital LLC v. Lew,*
    70 F. Supp. 3d 208 (D.D.C. 2014) ....................................................... *passim*

*Perry Capital LLC v. Mnuchin*,
  No. 14-5243, --- F.3d --, 2017 WL 677589 (D.C. Cir. Feb. 21, 2017) ................. *passim*

*Public Serv. Co. of New Hampshire v. Hudson Light & Power Dep't*,
  938 F.2d 338 (1st Cir. 1991) ........................................................................ 12

*Rapanos v. United States*,
  547 U.S. 715 (2006) ..................................................................................... 17

*Robinson v. Ada S. McKinley Cmty. Servs.*,
  19 F.3d 359 (7th Cir. 1994)........................................................................... 10

*Robinson v. FHFA*, No. 7:15-cv-109,
  2016 WL 4726555 (E.D. Ky. Sept. 9, 2016)....................................... *passim*

*SEC v. Nat'l Securities, Inc.*,
  393 U.S. 453 (1969) ..................................................................................... 13

*Solid Waste Agency of Northern Cook Cnty. v. U.S. Army Corps of Eng's*,
  531 U.S. 159 (2001) ..................................................................................... 18

*St. George Maronite Catholic Church v. Green*, No. CIV.A. SA-94-CA-0334,
  1994 WL 763743 (W.D. Tex. July 25, 1994) ................................................. 8

*Stapleton v. Advocate Health Care Network*,
  817 F.3d 517 (7th Cir. 2016) ....................................................................... 17

*Starr Int'l Co. v. Fed. Reserve Bank of N.Y.*,
  742 F.3d 37 (2d Cir. 2014)............................................................................ 15

*Starr Int'l Co. v. Fed. Reserve Bank of N.Y.*,
  906 F. Supp. 2d 202 (S.D.N.Y. 2012)........................................................... 16

*Starr Int'l Co. v. United States*,
  106 Fed. Cl. 50 (2012) ................................................................................. 20

*State of Ariz. v. Bowsher*,
  935 F.2d 332 (D.C. Cir. 1991) ..................................................................... 14

*Stommel v. LNV Corp.*,
  No. 2:13CV821DAK, 2014 WL 1340676 ....................................................... 8

*Taylor v. Sturgell,*
    553 U.S. 880 (2008) ........................................................................ 24

*Telematics Int'l, Inc. v. NEMLC Leasing Corp.,*
    967 F.2d 703 (1st Cir. 1992) ........................................................... 8

*Tooley v. Donaldson, Lufkin & Jenrette, Inc.,*
    845 A.2d 1031 (Del. 2004) ................................................... 19, 20, 21

*United States v. Jicarilla Apache Nation,*
    564 U.S. 162 (2011) ........................................................................ 14

*United States v. Petty Motor Co.,*
    327 U.S. 372 (1946) ........................................................................ 12

*Ward v. Resolution Trust Corp.,*
    996 F.2d 99 (5th Cir. 1993) .......................................................... 4, 5

*Zemel v. Rusk*
    381 U.S. 12 (1965 ................................................................... 16, 18

## STATUTES & REGULATIONS

5 U.S.C. § 702 ...................................................................... 22, 23

12 U.S.C. § 1455(l) .................................................................... 9

12 U.S.C. § 1719(g) ............................................................. *passim*

12 U.S.C. § 4617 ................................................................ *passim*

12 C.F.R. 1239.3 ...................................................................... 14

26 C.F.R. § 1.1001-3 ................................................................. 11

Consolidated Appropriations Act of 2016, H.R. 2029 § 702(b), 114th Cong. (2015) ..... 11

## INTRODUCTION

As was the case with the numerous lawsuits that preceded this suit, Plaintiffs' claims fail for lack of jurisdiction and, further, fail to state a claim.  First, the Housing and Economic Recovery Act of 2008 ("HERA"), 12 U.S.C. § 4617(f), precludes courts from ordering equitable relief that would interfere with the Federal Housing Finance Agency ("FHFA") in the exercise of its powers as conservator of Federal National Mortgage Association ("Fannie Mae") and the Federal Home Loan Mortgage Corporation ("Freddie Mac") (collectively, "the GSEs").  Despite this unambiguous statutory bar, Plaintiffs, who are shareholders in the GSEs, seek to rewrite the preferred stock purchase agreements ("PSPAs") through which the United States Department of Treasury ("Treasury") and the FHFA agreed to infuse hundreds of billions of dollars into the GSEs to maintain their positive net worth and sustain their ongoing operations.

As *every* court to have considered such claims has held, Plaintiffs' effort to set aside contractual agreements of the conservator is the precise type of interference that section 4617(f) prohibits, and Plaintiffs cannot evade section 4617(f) by suing FHFA's counter-party, Treasury.  Indeed, on February 21, 2017, the D.C. Circuit held that the conservator acted within its statutory powers and functions in executing the Third Amendment and, therefore, that section 4617(f) bars claims brought under the Administrative Procedure Act ("APA") that challenge the Third Amendment, whether brought against FHFA or Treasury.  *See Perry Capital LLC v. Mnuchin*, No. 14-5243, --- F.3d --, 2017 WL 677589 (D.C. Cir. Feb. 21, 2017) (affirming *Perry Capital LLC v. Lew*,

1

70 F. Supp. 3d 208 (D.D.C. 2014)).  The D.C. Circuit thus affirmed the dismissal of claims that are nearly identical to those asserted here.  *See, e.g.*, ECF No. 32, Pls. Mem. of Law in Opp. to Defs. Mot. to Dismiss & In Supp. of Pls. Mot. for Summ. J. ("Opp."), at 55 ("*Perry Capital* did involve APA claims similar to those at issue here.").  Plaintiffs' claims that Treasury exceeded its statutory authority thus misconstrue HERA, and, furthermore, are belied by 2015 legislation in which Congress ratified the Third Amendment.

Second, this suit runs afoul of HERA's prohibition against shareholder suits during conservatorship, 12 U.S.C. § 4617(b)(2)(A)(i).  Regardless of how they attempt to characterize them, Plaintiffs' claims are derivative because their alleged injury depends on an injury that the GSEs (allegedly) suffered, and because the "relief" that they seek would flow to the GSEs.  Even if their claims could be construed as "direct," it would not matter; Plaintiffs' claims, whether direct or derivative, fail under both section 4617(f) and section 4617(b) of HERA, and the APA provides no cause of action for direct claims against Treasury or FHFA under these circumstances.

Finally, the court's judgment in *Perry Capital*, an earlier-filed shareholder derivative lawsuit involving materially identical claims, has issue preclusive effect on this suit.  Thus, for several independent reasons, the complaint should be dismissed.[1]

---

[1] Treasury also joins in FHFA's request that the court dismiss Plaintiffs' separation-of-powers claim (Count IV) for the reasons provided in FHFA's Opposition to Plaintiffs' Motion for Summary Judgment, filed on February 27, 2017.

# ARGUMENT[2]

## I.  HERA FORECLOSES PLAINTIFFS' ATTEMPT TO RESTRAIN THE ACTIONS OF THE CONSERVATOR

### A.  HERA Forbids Claims for Equitable Relief for Actions Taken by FHFA as the Conservator of the GSEs

Plaintiffs raise scattershot arguments that the conservator lacked the statutory power to enter into the Third Amendment.  Opp. 10-30.  But Section 4617(f) forecloses this lawsuit, and Plaintiffs provide the Court with no reason to depart from the opinions in *Perry Capital* and *Robinson v. FHFA*, No. 7:15-cv-109, 2016 WL 4726555 (E.D. Ky. Sept. 9, 2016), dismissing identical claims on that basis.  *See Robinson*, 2016 WL 4726555, at *6 ("With HERA, Congress enacted a statutory scheme that swept away courts' authority to enjoin FHFA conduct."), *appeal pending* No. 16-6680.

While Plaintiffs argue that Section 4617(f) does not apply because, in agreeing to the Third Amendment, FHFA supposedly acted beyond the scope of its conservatorship power, Opp. 14-19, Plaintiffs cannot evade the jurisdictional barrier simply by alleging that FHFA and Treasury acted at odds with what is (in Plaintiffs' view) the proper purpose of a conservatorship.  The determination as to whether a particular action furthers the goal of the conservatorship is committed to the conservator, and, as the D.C. Circuit explained in *Perry Capital*, "FHFA's execution of the Third Amendment falls squarely within its statutory authority to '[o]perate the [Companies],' 12 U.S.C.

---

[2] The Treasury Defendants incorporate by reference the Nature and State of Proceedings and Statement of the Issues from their opening brief, *see* ECF No. 26, Treasury Mem. 2-3; *id.* 9-10.

§ 4617(b)(2)(B), to 'reorganiz[e]' their affairs, *id.* § 4617(a)(2); and to 'take such action as may be . . . appropriate to carry on the[ir] business,' *id.* § 4617(b)(2)(D)(ii)." 2017 WL 677589, at *9.  Further, "renegotiating dividend agreements, managing heavy debt and other financial obligations, and ensuring ongoing access to vital yet hard-to-come-by capital are quintessential conservatorship tasks designed to keep the Companies operational." *Perry Capital*, 2017 WL 677589, at *9.  Thus, contrary to Plaintiffs' contention, negotiating the PSPAs with Treasury, managing the remaining $258 billion committed by the taxpayers, and compensating the taxpayers, including the changes to the dividend and periodic commitment fee provisions established by the Third Amendment, all fall squarely within FHFA's statutory powers as conservator.

Nor can Plaintiffs evade section 4617(f) by claiming that the conservator's actions were unnecessary or ill-motivated.  *See, e.g.*, Opp. 8, 20 & 29.  "For purposes of applying Section 4617(f's) strict limitation on judicial relief, allegations of motive are neither here nor there . . . ."  2017 WL 677589, at *13.  *See also* FHFA Reply 10-12.[3]  The Fifth Circuit, for example, held that a plaintiff's allegation that the Resolution Trust Corporation's agreement to "dispose of an asset for a viciously low price [] frustrates the direct intent of Congress," did not establish jurisdiction in light of § 1821(j).  *Ward v. Resolution Trust Corp.*, 996 F.2d 99, 103 (5th Cir. 1993) ("Ward fails (or refuses) to recognize the difference between the exercise of a function or power that is clearly

---

[3] *See also Leon Cnty., Fla. v. FHFA*, 816 F. Supp. 2d 1205, 1208 (N.D. Fla. 2011), *aff'd*, 700 F.3d 1273 (11th Cir. 2012) ("Congress surely knew, when it enacted § 4617(f), that challenges to agency action sometimes assert an improper motive.  But Congress barred judicial review of the conservator's actions without making an exception for actions said to be taken from an improper motive.").

outside the statutory authority of the RTC on the one hand, and improperly or even unlawfully exercising a function or power that is clearly authorized by statute on the other.").[4]  It is unsurprising, then, that Plaintiffs' view of the jurisdiction-withdrawal provisions of HERA and FIRREA has been rejected again and again by the federal courts.  *See* cases cited, ECF No. 26, Mem. in Supp. of Mot. to Dismiss by Treasury Defs. ("Treasury Mem."), at 12-13, 16 & 3 n.2.

Further, Plaintiffs cannot circumvent § 4617(f) by alleging that the Third Amendment is an unlawful wind-down of the GSEs.  *See, e.g.*, Opp. 20.  First, this contention is belied by the reality that the GSEs "maintain an operational mortgage finance business and are, once again, profitable."  *Perry Capital*, 70 F. Supp. 3d at 228. But even assuming the truth of Plaintiffs' "wind-down" assertion, HERA allows for the appointment of FHFA as "conservator *or* receiver for the purpose of reorganizing, rehabilitating, *or* winding up the affairs of a regulated entity." 12 U.S.C. § 4617(a)(2) (emphasis added).  Plaintiffs argue that the term "winding up" is synonymous with liquidation, such that the statute empowers FHFA to "wind up" the affairs of the GSEs only if FHFA acts as receiver.  Opp. 20-21.  That is mistaken.[5]  As the D.C. Circuit

---

[4] Plaintiffs contend that cases like *Ward* are "best understood to mean only that Section 1821(j) applies . . . when a conservator or receiver violates a law other than the one that defines (and thus limits) the scope of its powers."  Opp. 13 n.4.  To the contrary, *Ward* specifically addressed a receiver's alleged failure "to maximize the net present value return" to the receivership estate—rather than an alleged violation of some other substantive laws.  996 F.2d at 103-04.

[5] Nor, contrary to Plaintiffs' contention, does HERA use "liquidation" and "winding up" synonymously; the terms are in fact used separately throughout the statute. *See, e.g.*, 12 U.S.C. § 4617(b)(3)(B) (referring to "liquidation *or* winding up of the affairs of a closed regulated entity") (emphasis added).

explained, HERA provides that FHFA "may" preserve and conserve assets "but does not compel it in any judicially enforceable sense[] to preserve and conserve Fannie's and Freddie's assets and to return the Companies to private operation." *Perry Capital*, 2017 WL 677589, at *9.

Contrary to Plaintiffs' assertion, the presumption of judicial review under the APA, Opp. 10 & 31, does not save their claims.  "The presumption favoring judicial review of administrative action is just that—a presumption . . . [L]ike all presumptions used in interpreting statutes, [it] may be overcome by specific language . . ." *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 349 (1984).  Section 4617(f) "draws a sharp line in the sand against litigative interference—through judicial injunctions, declaratory judgments, or other equitable relief—with FHFA's statutorily permitted actions as conservator or receiver," *Perry Capital*, 2017 WL 677589, at *8, and thus "qualifies as a reliable indicator of congressional intent to preclude review of non-monetary APA claims brought against both FHFA and Treasury." *Perry Capital*, 70 F. Supp. 3d at 221.

For these reasons, and for the reasons detailed in FHFA's reply brief, *see* FHFA Reply 3-16, Plaintiffs' allegations that the Third Amendment exceeded the scope of the Conservator's authority, or was improperly motivated, cannot overcome section 4617(f).

## B.    Section 4617(f) Also Deprives the Court of Jurisdiction Over Plaintiffs' Claims Against the Conservator's Counter-Party, Treasury

Plaintiffs cannot evade the jurisdictional limit of § 4617(f) by suing Treasury, because "the effect of any injunction or declaratory judgment aimed at Treasury's adoption of the Third Amendment would have just as direct and immediate an effect as if

the injunction operated directly on FHFA." *Perry Capital*, No. 14-5243, --- F.3d ---, slip

op. at 38.  As the D.C. Circuit explained, "it takes (at least) two to contract, and the

Companies, under FHFA's conservatorship, are just as much parties to the Third

Amendment as Treasury.  One side of the agreement cannot exist without the other." *Id.*

Indeed, the D.C. Circuit's conclusion in *Perry Capital* continues an unbroken line

of authority holding that the anti-injunction provision of HERA, or the nearly identical

provision in FIRREA, forbids courts from granting equitable relief directed at counter-

parties, as such relief would simply provide a plaintiff with another method to restrain the

conservator.  *See id.*; Treasury Mem. 12-13 (collecting cases).  Congress knew what is

was doing in section 4617(f) by not permitting every Conservator action to be the subject

of litigation; Congress determined to prevent such interference where billions of dollars

of taxpayer dollars were to be expended.

Plaintiffs argue, implausibly, that those holdings are limited to cases "challenging

the conduct or attempting to enforce the legal obligations of the federal conservator or

receiver or its ward."  Opp. 31.  But the cases do not support that supposed distinction.

The relevant question in each case was whether the relief requested would, from the

conservator's perspective, "restrain or affect" the exercise of statutory powers.  As the

D.C. Circuit explained in *Perry Capital*, "the direct and unavoidable effect of

invalidating Treasury's contract with the Companies would be to void the contract with

Treasury that FHFA concluded on the Companies' behalf.  That would be a 'dramatic

and fundamental' incursion on FHFA's exercise of its conservatorship authority." *Perry*

*Capital*, No. 14-5243, --- F.3d ---, slip op. at 40 (quoting *Hindes v. FDIC*, 137 F.3d 148, 161 (3d Cir. 1998)); *see also Robinson*, 2016 WL 4726555, at *3.[6]

Nor do the cases cited by Plaintiffs support their argument that, notwithstanding the express language of 12 U.S.C. § 4617(f), Plaintiffs may sue FHFA indirectly through its counter-party, Treasury.  Opp. 32-33.  In one case, the court held that the anti-injunction provision did not apply where the lawsuit "focused on [the third-party's] actions, not the actions of the FDIC," and it did "not believe" that the relief sought "would have a chilling effect on the FDIC's ability to transfer bundles of trust deeds to third parties."  *Stommel v. LNV Corp.*, No. 2:13CV821DAK, 2014 WL 1340676, at *5 (D. Utah Apr. 4, 2014).  In another case, the plaintiffs had sought recovery only against the third party and the court found that the requested relief "would not restrain or affect [the FDIC as receiver] in any way."  *LNV Corp. v. Outsource Serv. Mgmt., LLC*, No. CIV 13-1926 JNE/LIB, 2014 WL 834977, at *4 (D. Minn. Mar. 4, 2014).  Those scenarios

---

[6] *See Dittmer Properties, L.P. v. FDIC*, 708 F.3d 1011, 1017-18 (8th Cir. 2013) (stating that the relevant inquiry is "whether the challenged action is within the receiver's power or function," and "whether the challenged action would indeed 'restrain or affect' the FDIC's receivership powers," and holding that the statute barred suit against FDIC's counter-party); *Telematics Int'l, Inc. v. NEMLC Leasing Corp.*, 967 F.2d 703, 707 (1st Cir. 1992) ("Permitting Telematics to attach the certificate of deposit, if that attachment were effective against the FDIC, would have the same effect, from the FDIC's perspective, as directly enjoining the FDIC from attaching the asset.  In either event, the district court would restrain or affect the FDIC in the exercise of its powers as receiver."); *Hindes v. FDIC*, 137 F.3d 148, 160 (3d Cir. 1998) ("[T]he statute, by its terms, can preclude relief even against a third party, including the FDIC in its corporate capacity, where the result is such that the relief 'restrain[s] or affect[s] the exercise of powers or functions of the [FDIC] as a conservator or a receiver.'") (alterations in original); *St. George Maronite Catholic Church v. Green*, No. CIV.A. SA-94-CA-0334, 1994 WL 763743, at *4–*6 (W.D. Tex. July 25, 1994) (holding, despite allegations that "the contract with [a third party] arose as a result of fraud, a breach of good faith and fair dealing, and deceptive trade practices" that "§ 1821(j) bars any relief that would affect the contract between RTC–Receiver and [the third party], whether that relief is termed res[ci]ssion, declaratory, or anything else").

contrast starkly with Plaintiffs' suit here, where Plaintiffs have sued both Treasury and

FHFA, seeking identical injunctive relief from both.  Similarly, Plaintiffs' reliance on

*281-300 Joint Venture v. Onion*, 938 F.2d 35 (5th Cir. 1991), is inapposite.  There, the

Fifth Circuit considered neither whether FIRREA bars claims against the conservator's

counterparties, nor whether the requested equitable relief against the bank board would

affect or restrain the conservator's powers, much less did it hold that APA review is

available for such claims.  At bottom, no case Plaintiffs cites has anything to do with

third-party claims that would directly restrain or affect the actions of a conservator.

## II.   EVEN IF THERE WERE JURISDICTION, PLAINTIFFS' CLAIMS AGAINST TREASURY WOULD FAIL AS A MATTER OF LAW.

As explained above, *supra* Part I(C), HERA deprives the Court of jurisdiction over

Plaintiffs' claims asserting that Treasury's actions violated HERA and were arbitrary and

capricious in violation of the APA.  "Those claims fall within Section 4617(f)'s sweep as

well."  *Perry Capital*, No. 14-5243, slip op. at 38.  But even setting aside the bar of

section 4617(f), Plaintiffs' claims against Treasury would fail as a matter of law.

### A.   Treasury Did Not Exceed Its Authority Under HERA Because the Third Amendment Did Not Effect a "Purchase" of "Obligations or Other Securities."

Plaintiffs do not dispute that the "sunset provision" in 12 U.S.C. § 1719(g)(4)[7]

applies only to Treasury's authority to "purchase" securities, Treasury Mem. 5 & 19-20;

nor do they dispute that Treasury's authority to "exercise any rights received in

---

[7] While this section cites relevant portions of only Fannie Mae's charter, the cited language is identical in Freddie Mac's charter.  *Compare* 12 U.S.C. § 1719(g), *with* 12 U.S.C. § 1455(l).

connection" with earlier purchases, as well as its authority to hold or sell securities, did not expire, *see id.* § 1719(g)(2)(D).  And Plaintiffs do not dispute—and thus appear to concede—that HERA's emergency determination requirements apply only to Treasury's authority to "purchase" securities, *see* Treasury Mem. 21, not to Treasury's separate authority to hold or sell securities, or exercise rights received in connection with earlier purchases, *see id.* § 1719(g)(1); § 1719(g)(2).  Treasury Mem. 19.

Plaintiffs' assertion that the Third Amendment constituted a "purchase" of "obligations and other securities," *id.* § 1719(g)(1)(A), in violation of the sunset provision is mistaken.  Opp. 34-38.  What is more, Plaintiffs' arguments have already been considered and rejected by the district courts in *Perry Capital* and *Robinson*.  First, Plaintiffs argue that, because the Third Amendment involved an "exchange of value," it is necessarily effected a "purchase" of new securities.  Opp. 35.  But an "exchange of value" is also the touchstone of a valid contract amendment.  *See, e.g.*, *Robinson v. Ada S. McKinley Cmty. Servs.*, 19 F.3d 359, 364 (7th Cir. 1994) ("A valid modification requires an offer, acceptance, and consideration."); Farnsworth on Contracts § 4.21, p. 524 (3d ed. 2004).  And, as the district courts recognized in *Perry Capital* and *Robinson*, the Third Amendment created "a new formula of dividend compensation for a $200 billion-plus investment Treasury had *already* made," and did not result in the issuance of any stock or the pledging of any additional taxpayer funds by Treasury.  *See Perry Capital*, 70 F. Supp. 3d at 224 (emphasis added); *Robinson*, 2016 WL 4726555, at *4 (quoting *id.*).  Plaintiffs' construction is thus "belied by the reality of the transaction,"

*Robinson*, 2016 WL 4726555, at *4; the Third Amendment effected no "purchase of obligations and other securities," under any meaning of those terms.

Plaintiffs' argument is particularly wrong-headed in light of other provisions of HERA, which recognize the distinction between a purchase and a modification to an existing agreement, and expressly funded such modifications. *See* 12 U.S.C. § 1719(g)(3) ("Any funds expended for the purchase of, or modifications to, obligations and securities, or the exercise of any rights received in connection with such purchases under this subsection shall be deemed appropriated at the time of such purchase, modification, or exercise."). But if there were any doubt about Treasury's ongoing authority to amend the initial PSPAs, recently enacted legislation should eliminate it. *See infra* Part I(D) (discussing section 702(a)(2)(A) of the Consolidated Appropriations Act of 2016); Treasury Mem. 19. As Treasury explained in its opening brief, Congress recently recognized Treasury's ongoing right to "amend[] and restate[]" the PSPAs, *id.* § 702(a)(2)(A), and expressly acknowledged Treasury's rights under the stock certificates issued in connection with the Third Amendment. *See id.* § 702(a)(2)(B). Plaintiffs' claim that Treasury has no "power to amend the terms of Treasury's investment in the Companies," Opp. 34, is thus unavailing; Congress did not freeze the parties' contract terms or preclude Treasury and FHFA from altering their compensation arrangements as appropriate.[8]

---

[8] Plaintiffs also cite an IRS tax regulation, 26 C.F.R. § 1.1001-3, which addresses the circumstances in which "modification of the terms of a debt instrument" qualifies as an "exchange" of property, such that any financial gain resulting from the modification must be declared as income. *See* Opp. 37-38. Plaintiffs provide no reason to believe that

Even assuming that it were necessary that Treasury modify the PSPAs through the "exercise" of a reserved contractual "right," Opp. 34, that requirement was satisfied here. When it entered into the Third Amendment, Treasury "exercise[d] [the] right[]," 12 U.S.C. § 1719(g)(2)(A)—explicitly conferred by the original PSPAs in 2008—to amend those contracts.  *See* ECF No. 26-2 at 13, 27 ("This Agreement may be waived or amended solely by a writing executed by both of the parties hereto.").  That Treasury exercised its right to amend jointly with FHFA, *see* Opp. 34, makes it no less the exercise of a right.[9]  A contract confers a "right" to be "exercised" even when the right is to be exercised jointly.  *See, e.g.*, *Public Serv. Co. of New Hampshire v. Hudson Light & Power Dep't*, 938 F.2d 338, 345, 347 (1st Cir. 1991) (rejecting "attempt by appellants . . . to impede [one party's] exercise of its exclusive contract right to enter into an agreement with [the counterparty] to modify the Sellback Agreement.").[10]  Thus, even if Plaintiffs'

---

Congress intended the word "purchase" to be read synonymously with the word "exchange," as used by the IRS in a tax regulation addressing *debt* instruments, not *equity* instruments such as Treasury's preferred stock.  *See Perry Capital*, 70 F. Supp. 3d at 224 (rejecting identical argument); *Robinson*, 2016 WL 4726555, at *4 (same).

[9] Plaintiffs cite *United States v. Petty Motor Co.*, 327 U.S. 372 (1946), for the assertion that a contractual "right" cannot entail mutual agreement.  Opp. 34.  *Petty Motor* was a takings case that concerned the amount of just compensation the government owed to tenants of a property that the government had appropriated.  The Supreme Court determined that the tenants were entitled to damages equal to the value of the remainder of their lease.  *Id.* at 380.  In a footnote, the Court noted that plaintiffs were not entitled to damages based on the expected renewal of their leases, even though the building's landlord had often extended their leases through "mutual consent."  *Id.* at 380 n.9.  It was the terms of the lease, not the parties' informal expectations, that delineated the tenants' "rights" to compensation.  *Id.*

[10] Plaintiffs cannot revive their textually deficient "purchase" argument by relying on the "fundamental change" doctrine.  Treasury Mem. 20 & *id.* 20-21 n.11.  Even if it were

claims that Treasury acted outside the scope of its authority under HERA were not barred by section 4617(f), the claims would fail on their merits.

### B.     HERA Does Not Impose Fiduciary Duties on Treasury.

Plaintiffs claim that Treasury acted arbitrarily and capriciously by failing to consider alleged fiduciary duties, which, according to Plaintiffs, arise under Delaware and Virginia law.[11]  As a preliminary matter, the APA provides no cause of action for claims arising under state law.  *See El-Shifa Pharm. Indus. Co. v. United States*, 607 F.3d 836, 854 (D.C. Cir. 2010) (Kavanaugh, J., concurring) ("[C]ontrary to plaintiffs' inventive arguments, the APA does not borrow state law or permit state law to be used as a basis for seeking injunctive or declaratory relief against the United States.").  Plaintiffs' claim fails for this reason alone.  *Robinson*, 2016 WL 4726555, at *4 n.3 ("[T]here is no evidence of Congressional intent to graft state fiduciary duties onto the Treasury's responsibilities under HERA.").

---

true that the doctrine remains viable in the Fifth Circuit, as Plaintiffs appear to contend, Opp. 36 n.14, Plaintiffs make no attempt to explain how it could ever apply where the supposed "purchaser" (in this case, Treasury) does not claim to have been defrauded. Further, *SEC v. Nat'l Securities, Inc.*, 393 U.S. 453 (1969), does not stand for the proposition that "holders of a fundamentally changed security are considered purchasers of new securities," Opp. 36.  That case did not rely on the "purchase" language of section 10(b), but rather on the "broad antifraud purposes" of section 10(b) which were "furthered" by their application to an alleged deceptive scheme in which shareholders exchanged their stock as part of a merger.  393 U.S. at 467.

[11] Plaintiffs also refer to these alleged fiduciary duties to support their argument that their claims are direct under federal law.  Opp. 44-45.  But as explained below, these fiduciary duties simply do not exist.  *Robinson*, 2016 WL 4726555, at *4 n.3.

In an attempt to get around this roadblock, Plaintiffs assert that a regulation authorizing the GSEs to designate state corporate law for their internal by-laws somehow creates a fiduciary duty on the part of Treasury. Opp. 41 (citing 12 C.F.R. 1239.3). But that regulation cannot, and did not, obviate the Supremacy Clause; only *Congress* can choose to apply state law to a federal agency. *Hancock v. Train*, 426 U.S. 167, 179 (1976) ("[W]here Congress does not affirmatively declare its instrumentalities or property subject to regulation, the federal function must be left free of regulation."); *State of Ariz. v. Bowsher*, 935 F.2d 332, 334 (D.C. Cir. 1991) (same).[12]  The government possesses fiduciary duties "only to the extent it expressly accepts those responsibilities by statute," *United States v. Jicarilla Apache Nation*, 564 U.S. 162, 177 (2011), and Congress has not imposed such fiduciary duties here.[13]  *Robinson*, 2016 WL 4726555, at *4 n.3.  Moreover, the regulation in question makes clear that, even as regulator, FHFA

---

[12] Plaintiffs claim to find limits to the Supremacy Clause by citing two cases, *James Stewart & Co. v. Sadrakula*, 309 U.S. 94, 99 (1940), and *Pac. Coast Dairy v. Dep't of Agric. of Cal.*, 318 U.S. 285, 294 (1943), neither of which has anything to do with the intergovernmental immunity doctrine. Opp. 39.  Rather, both address the interim laws applied to third parties (not the government) when tracts of land are transferred between the federal government and the states.  *See Sadrakula*, 309 U.S. at 99 ("The Constitution . . . has long been interpreted so as to permit the continuance until abrogated of those rules existing at the time of the surrender of sovereignty which govern the rights of the occupants of the territory transferred."); *Pac. Coast Dairy*, 318 U.S. at 294 ("When the federal government acquired the tract, local law not inconsistent with federal policy remained in force until altered by national legislation.").  Neither applies here.

[13] As the court explained in the *Robinson* opinion, *Cobell v. Norton*, 240 F.3d 1081 (D.C. Cir. 2001), cited on page 30 of the opposition, is of no help to Plaintiffs.  *Robinson*, 2016 WL 4726555, at *4 n.3 (discussing *id.*). The fiduciary duties of the United States as a trustee of tribal land and property, discussed in that case, "can only arise from a statute, treaty, or executive order."  *Cobell*, 240 F.3d. at 1098 (quoting *National Wildlife Federation v. Andrus*, 642 F.2d 589, 611 (D.C. Cir. 1980).  The case in fact holds that where, as here, Congress has not imposed such a fiduciary duty, none exists.

14

permits a GSE to select a state law for routine governance insofar as the does not conflict with federal law.

In all events, any fiduciary duty claim of the sort that Plaintiffs attempt to assert would be inconsistent with federal law, and therefore would be preempted.  If Treasury were to owe state-law fiduciary duties to the GSEs' shareholders, as Plaintiffs contend, Treasury would bear an "unyielding" duty "to act in the best interests of the shareholders." *Cede & Co. v. Technicolor, Inc.*, 634 A.2d. 345, 360 (Del. 1993).  But HERA plainly does not permit Treasury to place the interest of shareholders above all other considerations; quite the contrary, HERA required Treasury to consider the public interest when it made investment decisions with respect to the GSEs, such as its decision to enter into the PSPAs. *See* 12 U.S.C. § 1719(g)(1)(C) (directing Treasury to consider several factors "to protect the taxpayers" before exercising its purchase authority, including "[t]he need for preferences or priorities regarding payments to the Government").  A state-law obligation for Treasury to maximize the return for GSE shareholders, to the exclusion of taxpayer protection or the health of the mortgage markets, "would present a significant and direct conflict with [Treasury's] obligation to act in the public interest," *Starr Int'l Co. v. Fed. Reserve Bank of N.Y.*, 742 F.3d 37, 42 (2d Cir. 2014), and thus is preempted. *Id.* at 41-42 ("Delaware fiduciary duty law cannot be applied to FRBNY's rescue activities consistently with adequate protection of the federal interests at stake in stabilizing the national economy.").

### C.    Treasury Is Not a Controlling Shareholder Under State Law

Even if state law could supply the basis for a claim against Treasury, a fiduciary

relationship would not arise because Treasury is not a "controlling shareholder" within the meaning of state law. The "existence of a controlling shareholder relationship is a question of law." *See Starr Int'l Co. v. Fed. Reserve Bank of N.Y.*, 906 F. Supp. 2d 202, 216-30 (S.D.N.Y. 2012). Plaintiffs cite no case that supports their contention that Treasury's alleged "extensive contractual rights" under the PSPAs "make it a dominant shareholder under Delaware law," Op. 38, and they make no attempt to answer the arguments of the opening brief, *see* Treasury Mem. 23, that their allegations are simply insufficient as a matter of law to establish that Treasury is a controlling shareholder.

### D. Recent Legislation Confirms That Treasury and FHFA Acted Within the Scope of Their Authority Under HERA

Plaintiffs argue that the Court should simply ignore legislation in which Congress expressly incorporated the Third Amendment and instructed Treasury not to sell its senior preferred stock until 2018, absent further legislative action. *See* Consolidated Appropriations Act of 2016 ("the Act"), H.R. 2029 § 702(b), 114th Cong. (2015) (enacted Dec. 18, 2015)). The principles on which Plaintiffs rely, *see* Opp. 26-27, are inapposite. Here, in contrast to the cases cited by Plaintiffs, the inference of congressional approval "is supported by more than mere congressional inaction," *Zemel v. Rusk*, 381 U.S. 1, 11-12 (1965); Congress *explicitly* incorporated the Third Amendment—including Treasury's rights to receive a variable dividend—into the scope of the new legislation. *See* Treasury Mem. 19; FHFA Mem. 18 n.10. As Plaintiffs appear to concede, (1) Congress clearly defined Treasury's authority under HERA to include the ongoing authority to amend the original PSPAs, *see id.* § 702(a)(2)(A)

(referring to Treasury's authority to "amend[] and restate[]" the PSPAs); (2) Congress specifically included the Third Amendment in its definition of Treasury's existing authority under HERA, *see id.* (incorporating agreement as amended on "August 17, 2012"); and (3) Congress expressly acknowledged Treasury's rights under the stock certificates issued in connection with the Third Amendment, which set forth the variable dividend provision that Plaintiffs challenge here, *see id.* § 702(a)(2)(B) (defining the PSPA to include the "terms, powers, preferences, privileges, limitations, or any other conditions" of the "Variable Liquidation Preference Senior Preferred Stock" certificates). Plaintiffs thus fail to refute the "overwhelming evidence" in the Act that Congress was fully aware of the Third Amendment and considered it a valid exercise of Treasury's authority under HERA. *See Stapleton v. Advocate Health Care Network*, 817 F.3d 517, 530-31 (7th Cir. 2016) (quoting *Rapanos v. United States,* 547 U.S. 715, 750 (2006)).

Plaintiffs further contend that no presumption of ratification can apply because it does not expressly "mention the propriety of the Net Worth Sweep." Opp. 27. But the doctrine of ratification does not require Congress to explicitly express its approval of an agency's action: the whole point of the doctrine is that Congress is *presumed* to ratify the agency's interpretation of a statute if Congress amends the statute fully aware of that interpretation but takes no steps to halt the agency action. *See N. Haven Bd. of Educ. v. Bell*, 456 U.S. 512, 535 (1982). The presumption applies here because Congress made other changes to Treasury's authority under HERA, *see* Act § 702(b), but it did not indicate any disapproval of the Third Amendment. *See Bell*, 456 U.S. at 535. Quite the opposite, Congress *explicitly* incorporated the Third Amendment—including Treasury's

17

rights to receive a variable dividend—into the scope of the new legislation, and it also instructed Treasury not to sell the senior preferred stock until at least 2018, absent further legislation.  *See* Act § 702(c); Treasury Mem. 19.

Plaintiffs' reliance on isolated remarks of legislators,[14] *see* Opp. 27, is thus unavailing; by amending aspects of Treasury's authority under HERA while leaving Treasury's authority to amend the PSPAs, as well its right receive the variable dividend right, "completely untouched" in the new legislation, *Zemel*, 381 U.S. at 12, Congress approved of the Third Amendment as consistent with Treasury's authority and the duties of the conservator under HERA.

## III.   HERA'S SHAREHOLDER RIGHTS PROVISION BARS PLAINTIFFS' CLAIMS

HERA's transfer-of-shareholder-rights provision, section 4617(b)(2)(A)(i), independently bars Plaintiffs' claims.  Because it transfers "all rights, titles, powers, and privileges" of the Enterprises and their shareholders to the Conservator, Plaintiffs possess no right to bring their claims, which are derivative.[15]  *See* Treasury Mem. 24-27.

---

[14] Indeed, as Plaintiffs' own cases establish, *see* Opp. 26, there is no resort to legislative history where, as here, the statute itself demonstrates Congress's awareness of the administrative interpretation at issue.  *See, e.g.*, *Solid Waste Agency of Northern Cook Cnty. v. U.S. Army Corps of Eng's*, 531 U.S. 159, 170 (2001) ("Because subsequent history is less illuminating than the contemporaneous evidence, respondents face a difficult task in overcoming the plain text and import of § 404(a)." (citation and quotation marks omitted)); *see also Alexander v. Sandoval*, 532 U.S. 275, 293 (2001) ("Neither as originally enacted *nor as later amended* does Title VI display an intent to create a freestanding private right of action to enforce regulations promulgated under § 602." (emphasis added)).

[15] Even if Plaintiffs' claims could be considered direct shareholder claims—and they are not—this should not change the outcome.  *See* Treasury Mem. 27.  The plain text of the statute provides that the Conservator succeeds, without exception, to "*all* rights, titles,

Furthermore, Plaintiffs' attempt to create a conflict-of-interest exception to the shareholder-rights provision, Opp. 51-54, is misplaced, because HERA "does not permit shareholders to bring derivative suits on behalf of the Companies even where the FHFA will not bring a derivative suit due to a conflict of interest." *Perry Capital*, No. 14-5243, --- F.3d ---, slip op. at 58.

### A.      Plaintiffs' Claims Are Derivative.

The direct/derivative inquiry does not turn on the statute under which the plaintiff sues, or how the plaintiff labels a claim, but on the nature of the harm alleged and the relief sought. *See Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1049 (Del. 2004);[16] *Perry Capital*, No. 14-5243, slip op. at 59 (citing *id.*).  Here, Plaintiffs' claims are derivative because they are founded on allegations that Treasury's and FHFA's actions have injured the GSEs; Plaintiffs' requested injunctive relief would not require Treasury or FHFA to take any action with respect to Plaintiffs, but would be directed to the GSEs; and Plaintiffs' requested relief would benefit the GSEs directly and Plaintiffs, as shareholders, only derivatively. *See id.* at 1039; Treasury Mem. 25-27; Am.

powers and privileges" of the Enterprises' shareholders, including direct claims of shareholders.  12 U.S.C. § 4617(b)(2)(A)(i) (emphasis added).  Nevertheless, based primarily on its analysis of the statutory context, the D.C. Circuit held in *Perry Capital* that the shareholder-rights provision does not apply to direct claims.  *Perry Capital*, No. 14-5243, --- F.3d ---, slip op. at 54-56; *see* FHFA Reply 18-21.  But this Court need not decide that issue to resolve Plaintiffs' claims, which, as explained below, are derivative under the analysis set forth in the D.C. Circuit's *Perry Capital* decision.

[16] The same standard applies under Virginia law.  *See Parsch v. Massey*, 72 Va. Cir. 121, 128 (2006).

Compl., Prayer for Relief; *Perry Capital*, No. 14-5243, --- F.3d ---, slip op. at 60. Plaintiffs' arguments that their claims are direct under state law miss the mark.

First, Plaintiffs contend that they have not alleged an equal dilution of the economic value of all shares held by shareholders of the GSEs, but have instead alleged that "the Net Worth Sweep destroyed the value of their investments through the transfer of the [GSEs'] entire net worth to Treasury." Opp. 48. But this argument ignores the fundamental principle that allegations based on the depletion of corporate assets assert a "classically derivative" injury. *In re J.P. Morgan Chase & Co. S'holder Litig.*, 906 A.2d 766, 771 (Del. 2006). Here, Plaintiffs' claims concern "an injury to the corporation," *Tooley*, 845 A.2d at 1039—that is, by their own account, "the transfer of the [GSEs'] entire net worth to Treasury." Opp. 48; *id.* at 1 & 25. Further, the relief that Plaintiffs seek—a change in dividend terms and the return of dividends paid to Treasury pursuant to the Third Amendment—would flow to the GSEs, not to Plaintiffs directly. *Tooley*, 845 A.2d at 1039.

Tellingly, Plaintiffs cite no authority that validates their theory that their claims are based on an individual injury independent of an injury to the GSEs.[17] Opp. 47-48. While they cite *Gentile v. Rossette*, 906 A.2d 91 (Del. 2006), for the proposition that a challenge to an alleged "improper extraction or expropriation" of corporate profits to one

---

[17] For example, in citing *Starr Int'l Co. v. United States*, 106 Fed. Cl. 50 (2012), *appeal pending*, Case Nos. 15-5103, 15-5133 (Fed. Cir.), Plaintiffs overlook the key distinction that that case did not concern an entity in conservatorship. Further, because the Third Amendment did not result in the issuance of any new shares to any party, there is no way for Plaintiffs to show that the agreement diluted their shares, as the plaintiff in *Starr International* alleged. *Id.* at 64.

class of shareholders qualifies as a direct claim, that case is inapposite.  *See* Treasury

Mem. 25.  In *Gentile*, the corporation had issued excess shares to a majority shareholder,

and "the shares representing the 'overpayment' embod[ied] both economic value and

voting power."  906 A.2d at 95-96.  Treasury, however, is not a majority shareholder of

the GSEs, and the alleged "overpayment" of dividends on Treasury's senior preferred

stock is in the form of cash, not additional voting stock.[18]  Thus, the Third Amendment

does not fit within the *Gentile* exception.[19]  *El Paso Pipeline GP Co., L.L.C. v.*

*Brinckerhoff*, 2016 WL 7380418, at *12–13 (Del. Dec. 20, 2016) ("*Gentile* concerned a

controlling shareholder and transactions that resulted in an improper transfer of both

---

[18] *Gradient OC Master, Ltd v. NBC Universal, Inc.*, 930 A.2d 104 (Del. Ch. 2007), which
Plaintiffs also cite, *see* Opp. 49 n.19, only undermines their position.  There, the court
held that the plaintiffs failed to show that either defendant NBCU or Citadel constituted
"a *de facto* or controlling shareholder" of the ION corporation in the absence of evidence
that defendants had "close to a majority of shares," regardless of allegations concerning
NBCU's "impact on the Board's decisions" as a "result of contractual obligations
between NBCU and ION."  *Id.* at 130–31.

[19] Plaintiffs' contractual relationship as stockholders in the GSEs is irrelevant to whether
their APA claims against Treasury are direct or derivative.  Regardless, all of plaintiffs'
claims here are derivative under *Tooley*, a legal conclusion that is consistent with the
recent holding of *NAF Holdings, LLC v. Li & Fung (Trading) Ltd.*, 118 A.3d 175 (Del.
2015).  In *NAF Holdings*, the Delaware Supreme Court was addressing a contractual
claim brought by NAF Holdings, LLC, a parent corporation, alleging that Li & Fung had
violated a commercial contract entered into with NAF's two wholly-owned subsidiaries
for purposes of effectuating a public company acquisition.  118 A.3d at 177.  Although
the Delaware Supreme Court held that NAF could bring its commercial contractual claim
as a direct rather than derivative claim, it specifically distinguished NAF's commercial
contractual suit, based on its individual rights under the contract, from the plaintiff-
stockholders in *Tooley*, because in *Tooley*, the plaintiffs had no separate contractual right
to bring a claim and had no contractual rights under the merger agreement. 118 A.3d at
182 n.10.  So too here, as Plaintiffs have no actionable contractual right to payment for
their stock.

economic value *and* voting power from the minority stockholders to the controlling stockholder." (emphasis in original)).

**B.      Principles of Federal Law Underscore the Conclusion That Plaintiffs' Claims Are Derivative.**

Plaintiffs alternatively argue that their claims are direct under federal law because, as persons who purportedly fall within the "zone of interests" of HERA, are "adversely affected or aggrieved" within the meaning of section 702, and thus have a "valid cause of action" under the APA.  Opp. 44-45 (citing 5 U.S.C. § 702).  The first problem with this argument is that the APA, by its own terms, provides no cause of action—direct or derivative—where, as here,[20] another statute limits judicial review of the agency action in question.  *Id.* § 701(a)(1); *see also Heckler v. Chaney*, 470 U.S. 821, 828 (1985) ("[B]efore any [APA] review at all may be had, a party must first clear the hurdle of § 701(a)."); *id.* at 843 (presumption of reviewability is "defeated if the substantive statute precludes review").  Because Plaintiffs cannot simply sue under the APA to circumvent sections 4617(f) and 4617(b), their efforts to cast themselves as aggrieved parties under section 702 of the APA amount to nothing.  *See also Robinson*, 2016 WL 4726555, at *6 (rejecting shareholder plaintiff's argument that "she falls within [HERA's] zone of interests" and concluding that the plaintiff thus lacked standing to sue under the APA).

---

[20] As explained above, *see supra* Parts I & II, section 4617(b) of HERA expressly bars derivative claims by the GSEs' shareholders, and section 4617(f) of HERA expressly bars judicial review of claims for equitable relief that, like Plaintiffs' claims, would restrain or affect the exercise of the conservator's powers.  Nothing in the APA provides Plaintiffs with a direct claim.

Furthermore, federal law, like state law, recognizes the distinction between injuries to a corporation and injuries to its shareholders.  *See Franchise Tax Bd. v. Alcan Aluminum Ltd.*, 493 U.S. 331, 336 (1990); *Canderm Pharmacal, Ltd. v. Elder Pharm., Inc.*, 862 F.2d 597, 603 (6th Cir. 1988) (discussing prudential shareholder standing rule under federal law); *Am. Airways Charters Inc. v. Regan*, 746 F.2d 865, 873 n.14 (D.C. Cir. 1984) ("no shareholder—not even a sole shareholder—has standing in the usual case to bring suit in an individual capacity on a claim that belongs to the corporation.").  And the distinction between derivative and direct claims certainly extends to the APA.  *See Sec. Indus. & Fin. Markets Ass'n v. Commodity Futures Trading Comm'n*, 67 F. Supp. 3d 373, 408 (D.D.C. 2014) (dismissing APA claims based on shareholder standing rule).  Thus, there can be no question that Plaintiffs' claims are derivative, whether evaluated under state or federal law.

## IV.   PLAINTIFFS' ATTEMPTS TO ESCAPE THE ISSUE PRECLUSIVE EFFECT OF *PERRY CAPITAL* ARE UNAVAILING.

Plaintiffs attempt to evade the judgment in *Perry Capital*, first by contending that their claims are direct, not derivative.  Opp. 55.  But as explained above, Plaintiffs' claims are derivative, whether evaluated under principles of state or federal law.  *Supra* Part III.  Plaintiffs alternatively argue that, even if their claims are derivative, issue preclusion should not bar their suit because "the plaintiffs in *Perry Capital* did not assert or seek to prosecute their APA claims as derivative actions."  Op. 56.  But Plaintiffs ignore that *Perry Capital* addressed expressly derivative claims.  *See Perry Capital*, 70 F. Supp. 3d at 229 ("The class plaintiffs have brought . . . derivative claims for breach of

fiduciary duty."); *Perry Capital*, No. 14-5243, slip op. at 58 (stating that "[t]he class plaintiffs asked the court to declare their lawsuit a 'proper derivative action'").  The district court held, and the D.C. Circuit affirmed, that the derivative claims (a) were barred where they sought some equitable relief, including rescission of the Third Amendment, and such relief is barred by Section 4617(f), *see Perry Capital*, 70 F. Supp. at 224-29; *cf. Perry Capital*, No. 14-5243, slip op. at 63; and (b) HERA's succession provision, 12 U.S.C. § 4617(b)(2)(A)(i), bars derivative claims notwithstanding allegations that the Conservator faced a conflict of interest.  *Perry Capital*, 70 F. Supp. 3d at 230-32; *Perry Capital*, No. 14-5243, slip op. at 54-58.

It is black-letter law that issue preclusion bars "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim."  *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (emphasis added).  The issues of whether HERA bars all claims seeking equitable relief and shareholder derivative claims, notwithstanding an alleged conflict of interest, were actually litigated in *Perry Capital* and were necessary for the district court's dismissal, affirmed by the D.C. Circuit, of the derivative claims.  Plaintiffs do not argue otherwise.  Thus, they are barred from re-litigating those issues here, even under the guise of a different derivative claim.[21]

---

[21] Thus, Plaintiffs' reliance on the D.D.C.'s *Rafter* order, Opp. 56 n.24, is inapt: whether the court's conclusion in *Perry Capital* that the contract claims were derivative can be characterized as a holding vs. *dicta* is of no moment, given that the court considered and dismissed expressly derivative claims as barred by HERA.  That holding precludes Plaintiffs' derivative claims here.

Plaintiffs argue, in passing, that they should not be bound by *Perry Capital* because they "cannot be presumed to have been on notice that their rights were at issue in that case." Opp. 56. But there is no "notice" requirement for issue preclusion to apply to subsequent derivative actions, *see Arduini v. Hart*, 774 F.3d 622, 637-38 (9th Cir. 2014), and courts routinely apply issue preclusion in subsequent derivative actions without considering notice. *See, e.g.*, *Cottrell v. Duke*, 737 F.3d 1238 (8th Cir. 2013); *In re Sonus Networks, Inc, S'holder Derivative Litig.*, 499 F.3d 47, 64 (1st Cir. 2007).

Plaintiffs also complain that their interests were not adequately represented in *Perry Capital* because those Plaintiffs "did not even purport to assert APA claims on behalf of the Companies." Op. 57. It is difficult to make sense of this argument in light of Plaintiffs' admission that "*Perry Capital* did involve APA claims similar to those at issue here." Opp. 55. In any event, Plaintiffs fail to show that their interests diverge in any material way from those of the plaintiffs litigating identical issues in *Perry Capital*.

Finally, the Court should reject Plaintiffs' request for a "special circumstances" exception to the normal rules of preclusion. Opp. 57. The ever-growing number of follow-on shareholder suits asserting duplicative challenges to the Third Amendment underscores the need to apply the issue preclusion doctrine; Plaintiffs fail to establish any good reason to except their piled-on suit from the normal rules.

## CONCLUSION

For the foregoing reasons, and those set forth in Defendants' memoranda in support of their motion to dismiss, the Treasury Defendants respectfully request the Court dismiss with prejudice all of Plaintiffs' claims.

25

Dated: February 27, 2017                    Respectfully submitted,

                                            CHAD R. READLER
                                            Acting Assistant Attorney General

                                            KENNETH MAGIDSON
                                            United States Attorney

                                            DIANE KELLEHER
                                            Assistant Branch Director

                                            /s/ *Deepthy Kishore*
                                            DEEPTHY C. KISHORE (IL Bar 6306338)
                                             *Attorney in Charge*
                                            ROBERT MERRITT
                                            THOMAS D. ZIMPLEMAN
                                            U.S. Department of Justice
                                            Civil Division, Federal Programs Branch
                                            P.O. Box 883
                                            Washington, D.C. 20044
                                            Tel.: (202) 616-4448
                                            Fax: (202) 616-8470
                                            deepthy.c.kishore@usdoj.gov
                                            *Counsel for the United States*
                                            *Department of the Treasury*