IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| J. PATRICK COLLINS, *et al.*,<br><br>    Plaintiffs,<br><br> vs.<br><br>THE FEDERAL HOUSING FINANCE AGENCY, *et al.*,<br><br>    Defendants. | No. 4:16-cv-03113 |

**PLAINTIFFS' SUR-REPLY CONCERNING THE
D.C. CIRCUIT'S *PERRY CAPITAL* DECISION**

Although Defendants do not mention it in their motion to dismiss reply briefs, Judge Brown's dissenting opinion in *Perry Capital* reached the conclusion and embraced many of the arguments that Plaintiffs urge here. The fact that Judge Brown was outvoted does not mean that she was wrong, and Plaintiffs submit that her analysis is more persuasive than that of the *Perry Capital* majority.

As an initial matter, it was common ground between the majority and dissenting opinions that "the bar on judicial review" in Section 4617(f) does not apply in cases in which FHFA exceeds its "statutory conservatorship powers." *Perry Capital, LLC v. Mnuchin*, 848 F.3d 1072, 1087 (D.C. Cir. 2017); *see also id.* at 1119–20 (Brown, J., dissenting). Thus, contrary to arguments advanced by the Defendants in this case, Plaintiffs can prevail simply by showing that FHFA acted beyond its conservatorship powers under HERA; the conservator need not "clearly" exceed its authority for this Court to intervene.

1

Plaintiffs' Mem. of Law in Opp'n to Defendants' Motions to Dismiss 12 (Feb. 9, 2017), Doc. 32 ("MTD Response").

In determining the scope of FHFA's conservatorship powers for purposes of this analysis, the *Perry Capital* dissent correctly concluded that Section 4617(b)(2)(D) "mark[s] the bounds of FHFA's conservator . . . powers." 848 F.3d at 1118. FHFA's mission as conservator is to put the Companies "in a sound and solvent condition" and to "preserve and conserve [their] assets and property," 12 U.S.C. § 4617(b)(2)(D), and actions by FHFA that are antithetical to that mission may—indeed, must—be enjoined. This reading of HERA is supported by "the long history of fiduciary conservatorships at common law baked into" the provisions of FIRREA on which HERA was modeled. *Perry Capital*, 848 F.3d at 1121 (Brown, J., dissenting). It is also consistent with decades of FDIC conservatorship practice under FIRREA, *id.* at 1127–28, as well as FHFA's own repeatedly expressed understanding of its statutory conservatorship mission. Those statements demonstrate beyond a doubt that outside the context of litigation FHFA itself interprets Section 4617(b)(2)(D) as imposing binding mandates, not optional suggestions. *See* Exhibit A. No federal agency acting as "conservator" has ever been permitted to expropriate for the federal government the entire net worth of the financial institutions under its care, and Congress gave FHFA no such power when it enacted HERA.

The *Perry Capital* majority did not disagree with the dissent's premise that FHFA may be enjoined from exceeding its conservatorship powers, nor did it hold that the Net Worth Sweep was consistent with FHFA's statutory charge to preserve and conserve Fannie's and Freddie's assets and return them to a sound and solvent condition. Rather, the

*Perry Capital* majority concluded that Section 4617(b)(2)(D) does not place any limits on how FHFA exercises those powers. The majority based this conclusion almost entirely on the statute's use of the word "may," reasoning that FHFA has "permissive, discretionary authority" to preserve and conserve the Companies' assets and to restore them to a sound and solvent condition but that it is not *required* to do so. 848 F.3d at 1087–90. But as the dissent correctly argued, HERA's use of "may" in Section 4617(b)(2)(D) "is best understood as a simple concession to the practical reality that a conservator may not always succeed in rehabilitating its ward," and it does not leave FHFA as conservator free to "affirmatively sabotage the Companies' recovery." *Id.* at 1118 n.1 (Brown, J., dissenting). Furthermore, the *Perry Capital* majority's contrary interpretation is inconsistent with the overall statutory design, which specifically enumerates what FHFA "may" do as conservator and does not empower it to do anything else. "[A]n agency literally has no power to act . . . unless and until Congress confers power upon it," *New York v. FERC*, 535 U.S. 1, 18 (2002), and by authorizing FHFA to return Fannie and Freddie to soundness and solvency and preserve and conserve their assets, Congress did not authorize FHFA to do the opposite. Indeed, as explained above, outside of litigation FHFA has repeatedly recognized that these authorizations are binding mandates, not mere suggestions.

The *Perry Capital* majority also sought support for its interpretation in HERA's incidental powers provision, which provides that FHFA "as conservator or receiver" may "take any action authorized by this section, which the Agency determines is in the best interests of the regulated entity or the Agency." 12 U.S.C. § 4617(b)(2)(J); *see* 848 F.3d at 1094. But as the dissent explained, this incidental power is granted "*to conservators or*

3

*receivers*"—terms that have a well-established common law meaning—and Congress's conferral of authority that is "incidental" to others specifically enumerated should not be understood to "erase[ ] any outer limit to FHFA's statutory powers." 848 F.3d at 1123; *see* MTD Response 25–26. Supreme Court precedent "requires *an affirmative act by Congress* . . . to authorize departure from a common law definition," *Perry Capital*, 848 F.3d at 1123 (citing *Morissette v. United States*, 342 U.S. 246, 263 (1952)), and HERA's incidental powers provision does not come close to satisfying that requirement.

Troublingly, the *Perry Capital* majority's sweeping conclusion that FHFA need not pursue the ends of a traditional conservator—and, indeed, may effectively do whatever it wants—raises grave doubts about Section 4617's constitutionality under the nondelegation doctrine. Virtually every provision in HERA that discusses the conservator's responsibilities begins with the word "may," and if that word makes everything that follows optional there is nothing left in the statute instructing FHFA as to how it should exercise its discretion as conservator. A statute that provides "literally no guidance for the exercise of discretion" violates the nondelegation doctrine, *Whitman v. American Trucking Ass'ns*, 531 U.S. 457, 474 (2001), and the Supreme Court has repeatedly adopted "narrow constructions to statutory delegations that might otherwise" run afoul of that principle, *Mistretta v. United States*, 488 U.S. 361, 373 n.7 (1989); *see Jackson v. Stinnett*, 102 F.3d 132, 135 n.3 (5th Cir. 1996). In *Fahey v. Mallonee*, 332 U.S. 245, 250–53 (1947), for example, a statute did not specify the criteria a bank regulator should use when deciding whether to place banks into receivership. In rejecting a nondelegation challenge to this statutory scheme, the *Fahey* Court interpreted the statute as implicitly adopting the "many

4

precedents [that] have crystallized into well-known and generally acceptable standards" for the appointment of receivers. *Id.* at 250. While *Fahey* read background principles of receivership *into* a statute to *avoid* a nondelegation problem, the *Perry Capital* majority did the opposite—reading the word "may" to nullify conservatorship duties actually enumerated in the statute and thus leaving the conservator with no guidance from Congress as to how it should exercise its powers. This constitutional flaw in the statute as interpreted by the *Perry Capital* majority is made even more problematic by Section 4617(f)'s restriction on judicial review. *See United States v. Garfinkel*, 29 F.3d 451, 459 (8th Cir. 1994) (observing that the availability of judicial review "is a factor weighing in favor of upholding a statute against a nondelegation challenge"). This Court should avoid these constitutional problems by adopting the *Perry Capital* dissent's interpretation.

As the *Perry Capital* dissent illustrates, this Court need not consider FHFA's motivations for imposing the Net Worth Sweep or whether the Companies are in a de facto liquidation to conclude that the conservator exceeded its statutory powers. "The capital depletion accomplished in the Third Amendment . . . is patently incompatible with any definition of the conservator role," regardless of the motivations for adopting it. 848 F.3d at 1126. That is because "divesting the Companies of their near-entire net worth, is plainly antithetical to a conservator's charge to 'preserve and conserve' the Companies' assets," *id.* at 1125, as well as the charge to rehabilitate the Companies by restoring them to soundness and solvency. In all events, the text of HERA fully supports considering the Net Worth Sweep's purpose as well as its inevitable consequences for the Companies' soundness and solvency. *See* MTD Response 27–29. There is accordingly no reason for

5

this Court to blind itself to the fact that Defendants imposed the Net Worth Sweep with the expressed aim of "expedit[ing] the wind down of Fannie Mae and Freddie Mac" while making sure "that every dollar of earnings that Fannie Mae and Freddie Mac generate" would go to Treasury. Complaint ¶ 135 (Oct. 20, 2016), Doc. 1 ("Compl.") (quoting Treasury Press Release).

Plaintiffs disagree with the *Perry Capital* majority's conclusion that Section 4617(f) bars claims for equitable relief against Treasury when that agency contracts with FHFA as conservator. 848 F.3d at 1096–97. The upshot of the *Perry Capital* majority's analysis is that, while courts may enjoin FHFA from exceeding its powers under HERA, the conservator can by contract authorize another federal agency to violate its own separate obligations under the same statute. Nothing in HERA's text supports this counterintuitive conclusion, much less speaks with the clarity necessary to rebut the strong presumption in favor of the reviewability of administrative action. *See* MTD Response 31. The *Perry Capital* majority's expansive interpretation of Section 4617(f) makes the time limits Congress placed on Treasury's authority to invest in the Companies completely unenforceable—a result that Congress plainly did not envision or intend.

Although Plaintiffs disagree with much of the *Perry Capital* majority's legal analysis and its ultimate conclusion, it should be noted that the court rejected several of the arguments Defendants advance here. In particular, the majority ruled that 12 U.S.C. § 4623(d) does not deprive courts of subject matter jurisdiction to hear challenges to the Net Worth Sweep. 848 F.3d at 1085; *see* MTD Response 57–61. The *Perry Capital* majority also ruled that HERA's succession provision, 12 U.S.C. § 4617(b)(2)(A)(i), does

6

not prevent shareholders from pressing direct claims during conservatorship. 848 F.3d at 1104–05; *see* MTD Response 40–43.

Finally, Plaintiffs note that the *Perry Capital* majority opinion is peppered with assertions that in 2008 Fannie and Freddie were on "the brink of collapse," 848 F.3d at 1079, that the Net Worth Sweep prevented the Companies from falling into a "dividend-driven downward debt spiral," *id.* at 1083, and that Treasury provided a "$200 billion-plus lifeline" that "saved the Companies," *id.* at 1094. These assertions were instrumental to the *Perry Capital* majority's decision, as the majority reasoned that FHFA had not strayed outside of its conservator role by entering "an agreement that ensures continued access to vital capital" by "divert[ing] all dividends to the lender, who had singlehandedly saved the Companies from collapse . . . ." *Id.* at 1091. Plaintiffs vehemently disagree with these statements, and, more importantly, they are flatly contrary to allegations in the Complaint. *See* Compl. ¶¶ 17–24 (alleging that Defendants knew that Companies were never in a dividend "death spiral" and that at all times the Companies were free to pay dividends in kind with additional preferred stock); *id.* ¶¶ 46–48 (alleging that the Companies were not in financial distress when they were forced into conservatorship and that they generated sufficient cash to cover their obligations throughout the financial crisis); *id.* ¶¶ 88–103 (describing the Companies' dramatic return to profitability just before the Net Worth Sweep was imposed). This Court is of course required to accept as true Plaintiffs' factual allegations—not contrary statements in the *Perry Capital* majority opinion—for purposes of ruling on Defendants' motions to dismiss.

7

Date: March 20, 2017                     Respectfully submitted,

**Beck Redden LLP**

By: /s/ Chad Flores
Chad Flores, Attorney-in-charge
Texas Bar No. 24059759
S.D. Tex. Bar. No. 1060324
cflores@beckredden.com
Owen J. McGovern, Of counsel
Texas Bar No. 24092804
S.D. Tex. Bar. No. 2523814
omcgovern@beckredden.com
Parth S. Gejji, Of counsel
Texas Bar No. 24087575
S.D. Tex. Bar No. 2917332
pgejji@beckredden.com
1221 McKinney St., Suite 4500
Houston, TX 77010
(713) 951-3700 Telephone
(713) 951-3720 Facsimile
Counsel for Plaintiffs

## **CERTIFICATE OF SERVICE**

I certify that this filing was served on all parties' counsel by the Court's Electronic Filing System on March 20, 2017.

                                                /s/ Chad Flores
                                                Chad Flores, Attorney-in-charge
                                                Texas Bar No. 24059759
                                                S.D. Tex. Bar No. 1060324
                                                1221 McKinney St., Suite 4500
                                                Houston, TX 77010
                                                (713) 951-3700 Telephone
                                                (713) 951-3720 Facsimile

Counsel for Plaintiffs