United States District Court
Southern District of Texas
**ENTERED**
May 22, 2017
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PATRICK J. COLLINS, *et al.*, § | | |
| Plaintiffs, § | | |
| § | | |
| v. § | CIVIL ACTION NO. H-16-3113 | |
| § | | |
| FEDERAL HOUSING FINANCE § | | |
| AGENCY, *et al.*, § | | |
| Defendants. § | | |

# **MEMORANDUM AND ORDER**

Plaintiffs Patrick J. Collins, Marcus J. Liotta and William M. Hitchcock are shareholders in the Federal National Mortgage Association ("Fannie Mae") and/or the Federal Home Loan Mortgage Corporation ("Freddie Mac"). Plaintiffs complain that actions by the Federal Housing Finance Agency ("FHFA") and the United States Department of Treasury ("Treasury") adversely affected the value of Plaintiffs' shares. The case is now before the Court on the Motion to Dismiss [Doc. # 23] filed by Defendants FHFA and its Director Melvin L. Watt. Also pending is the Motion to Dismiss [Doc. # 25] filed by Treasury and its Secretary Steven Mnuchin,[1] the Motion for Summary Judgment on Constitutional Claim [Doc. # 33] filed by Plaintiffs, and

---

[1] In February 2017, Mnuchin became Secretary of Treasury, replacing Jacob Lew, the named Defendant. As a result, Mnuchin was automatically substituted as Defendant in this lawsuit. *See* FED. R. CIV. P. 25(d); *McCardell v. U.S. Dept. of Hous. and Urban Dev.*, 794 F.3d 510, 515 n.19 (5th Cir. 2015).

the Cross-Motion for Summary Judgment on Constitutional Claim [Doc. # 35] filed by the FHFA and Watt.[2] The Court has reviewed the full record and the applicable legal authorities. Based on that review, the Court **grants** Defendants' Motions and **denies** Plaintiffs' Motion.

I. **BACKGROUND**

The historical background of this dispute is set forth fully in the well-reasoned decision of the United States Court of Appeals for the District of Columbia in *Perry Capital, LLC v. Mnuchin*, 948 F.3d 1072 (D.C. Cir. 2017). The Federal National Mortgage Association ("Fannie Mae") and the Federal Home Loan Mortgage Corporation ("Freddie Mac") became major players in the United States housing market. By 2008, they controlled combined mortgage portfolios valued at $5 trillion, nearly half of the United States mortgage market.

In 2008, the United States housing market suffered a severe decline. Fannie Mae and Freddie Mac suffered a precipitous drop in the value of their mortgage

---

[2] The FHFA and Watt filed a Memorandum [Doc. # 24] in support of their Motion to Dismiss, Treasury and Mnuchin filed a Memorandum [Doc. # 26] in support of their Motion to Dismiss, Plaintiffs filed a combined Memorandum [Doc. # 32] in opposition to Defendants' Motions to Dismiss and in support of their Motion for Summary Judgment, the FHFA and Watt filed a Reply [Doc. # 37] in support of their Motion to Dismiss, Treasury and Mnuchin filed a Reply [Doc. # 38] in support of their Motion to Dismiss, Plaintiffs filed a combined Reply [Doc. # 41], the FHFA and Watt filed a Reply [Doc. # 49] in support of their Motion for Summary Judgment on Constitutional Claim, Plaintiffs filed a Sur-Reply [Doc. # 45], and Defendants filed a Response [Doc. # 48] to Plaintiffs' Sur-Reply.

portfolios. As a result, Congress enacted the Housing and Economic Recovery Act ("HERA"), which established FHFA. HERA classified Fannie Mae and Freddie Mac as "regulated entities" subject to the direct supervision of FHFA. *See* 12 U.S.C. § 4511(b)(1). Fannie Mae and Freddie Mac were subject also to the general regulatory authority of FHFA's Director. *See* 12 U.S.C. § 4511(b)(1), (2). HERA charged FHFA's Director with overseeing the prudential operations of Fannie Mae and Freddie Mac, and ensuring that they operated in a safe and sound manner, consistent with the public interest. *See* 12 U.S.C. § 4513(a)(1)(A), (B)(i), (B)(v).

HERA also authorized the FHFA Director to appoint FHFA as either conservator or receiver for Fannie Mae and Freddie Mac, "for the purpose of reorganizing, rehabilitating, or winding up the[ir] affairs." 12 U.S.C. § 4617(a)(2). HERA grants to FHFA as conservator broad authority and discretion over the operation of Fannie Mae and Freddie Mac. For example, upon appointment as conservator of a regulated entity, FHFA immediately succeeds to "all rights, titles, powers, and privileges of the regulated entity, and of any stockholder, officer, or director of such regulated entity with respect to the regulated entity and the assets of the regulated entity." 12 U.S.C. § 4617(b)(2)(A). Additionally, FHFA is authorized to "take over the assets of and operate the regulated entity," and to "preserve and

conserve the assets and property of the regulated entity." 12 U.S.C. § 4617(b)(2)(B)(i), (iv).

HERA also grants to FHFA expansive general powers, authorizing FHFA to, *inter alia*, "take such action as may be . . . necessary to put the regulated entity in a sound and solvent condition" and "appropriate to carry on the business of the regulated entity and preserve and conserve [its] assets and property[.]" 12 U.S.C. § 4617(b)(2), (2)(D). FHFA is also authorized, in its discretion, to "transfer or sell any asset or liability of the regulated entity in default . . . without any approval, assignment, or consent." 12 U.S.C. § 4617(b)(2)(G). Additionally, FHFA is authorized to "disaffirm or repudiate [certain] contract[s] or lease[s]." 12 U.S.C. § 4617(d)(1). HERA, to enable the FHFA Director to protect the "public interest," granted to FHFA as conservator the authority to exercise its statutory authority and any necessary "incidental powers" in the manner that FHFA "determines is in the best interests of the regulated entity or the Agency." 12 U.S.C. § 4617(b)(2)(J).

Separately, HERA granted Treasury temporary authority to "purchase any obligations and other securities issued by" Fannie Mae and Freddie Mac. 12 U.S.C. §§ 1455(l)(1)(A), 1719. This enabled Treasury to buy large numbers of Fannie Mae and Freddie Mac shares, and thereby infuse the companies with capital to ensure their continued liquidity and stability. HERA conditioned such purchases of stock on

Treasury's specific determination that the terms of the purchase would "protect the taxpayer." 12 U.S.C. § 1719(g)(1)(B)(iii). A sunset provision terminated Treasury's authority to purchase shares after December 31, 2009. 12 U.S.C. § 1719(g)(4). Thereafter, Treasury was authorized only "to hold, exercise any rights received in connection with, or sell, any obligations or securities purchased." 12 U.S.C. § 1719(g)(2)(D).

Importantly for the pending lawsuit, HERA sharply limits judicial review of FHFA's conservatorship activities, directing that "no court may take any action to restrain *or affect* the exercise of powers or functions of the Agency as a conservator." 12 U.S.C. § 4617(f) (emphasis added).

On September 6, 2008, FHFA's Director placed both Fannie Mae and Freddie Mac into conservatorship. The next day, Treasury entered into Preferred Stock Purchase Agreements ("PSPAs") with Fannie Mae and Freddie Mac, under which Treasury committed to invest billions of dollars in the two companies to keep them from defaulting. In exchange for Treasury's capital infusion, Treasury received one million senior preferred shares in each company. Those shares entitled Treasury to: (i) a $1 billion senior liquidation preference – a priority right above all other shareholders, whether preferred or otherwise, to receive distributions from assets if the entities were dissolved; (ii) a dollar-for-dollar increase in that liquidation

preference each time Fannie Mae and Freddie Mac drew upon Treasury's funding commitment; (iii) quarterly dividends that the companies could either pay at a rate of 10% of Treasury's liquidation preference or a commitment to increase the liquidation preference by 12%; (iv) warrants allowing Treasury to purchase up to 79.9% of Fannie Mae's and Freddie Mac's common stock; and (v) the possibility of periodic commitment fees over and above any dividends. The PSPAs also included a covenant that Fannie Mae and Freddie Mac could not "declare or pay any dividend (preferred or otherwise) or make any other distribution (by reduction of capital or otherwise), whether in cash, property, securities or a combination thereof" without Treasury's advance consent (unless the dividend or distribution was for Treasury's Senior Preferred Stock or warrants).

The PSPAs initially capped Treasury's commitment to invest capital at $100 billion per company. When it appeared that Fannie Mae and Freddie Mac would require even greater capital infusions by Treasury, FHFA and Treasury adopted the First Amendment to the PSPAs in May 2009, under which Treasury agreed to double the funding commitment to $200 billion for each company. Seven months later, in a Second Amendment to the PSPAs, FHFA and Treasury again agreed to raise the cap, this time to an adjustable figure determined in part by the amount of Fannie Mae's and Freddie Mac's quarterly cumulative losses between 2010 and 2012. As of June 30,

2012, Fannie Mae and Freddie Mac together had drawn $187.5 billion from Treasury's funding commitment.

Through the first quarter of 2012, Fannie Mae and Freddie Mac repeatedly struggled to generate enough capital to pay the 10% dividend they owed to Treasury under the amended PSPAs. As a result, FHFA and Treasury adopted the Third Amendment to the PSPAs on August 17, 2012. The Third Amendment to the PSPAs replaced the previous quarterly 10% dividend formula with a requirement that Fannie Mae and Freddie Mac pay as dividends only the amount, if any, by which their net worth for the quarter exceeded a capital buffer of $3 billion, with that buffer decreasing annually down to zero by 2018. Stated differently, the Third Amendment requires Fannie Mae and Freddie Mac to pay to Treasury quarterly dividends equal to their excess net worth. Under the new dividend formula in the Third Amendment, Fannie Mae and Freddie Mac would no longer incur additional debt in order to make their quarterly dividend payments, but they would no longer accrue capital during good quarters. Under the Third Amendment, Fannie Mae and Freddie Mac together paid Treasury $130 billion in dividends in 2013, and another $40 billion in 2014. In 2015, however, Fannie Mae's and Freddie Mac's quarterly net worth was much lower, such that Fannie Mae paid Treasury $10.3 billion and Freddie Mac paid Treasury $5.5 billion. By comparison, without the Third Amendment, Fannie Mae and Freddie Mac

together would have been required to pay Treasury $19 billion in 2015.  If they had been unable to make the 2015 payments, the companies would have been required to draw on Treasury's commitment of funds and thereby increase Treasury's liquidation preference.  In the first quarter of 2016, Fannie Mae paid Treasury $2.9 billion and Freddie Mac paid Treasury no dividend at all.

Plaintiffs in this case are shareholders in Fannie Mae and/or Freddie Mac.  They filed this lawsuit in October 2016.  Counts 1-3 of the Complaint [Doc. # 1] seek relief under the Administrative Procedure Act ("APA").  Count 4 challenges the provision in HERA that requires cause for removal of the FHFA Director ("Removal Provision"), arguing that it is an unconstitutional violation of the separation of powers.  Plaintiffs seek a declaratory judgment that the Third Amendment violated HERA, that Treasury acted arbitrarily and capriciously by executing the Third Amendment, and that FHFA's structure violates the separation of powers.  Plaintiffs also seek an injunction requiring a "return" to Fannie Mae and Freddie Mac of all dividend payments made pursuant to the Third Amendment, and enjoining the FHFA from applying the Third Amendment in the future.  Plaintiffs ask this Court to vacate and set aside the Third Amendment.

Defendants moved to dismiss Counts 1-3 based on the limit on judicial review set forth in 12 U.S.C. § 4617(f).  Both sides moved for summary judgment on Count

4, the constitutional challenge. The pending motions have been exhaustively briefed and are now ripe for decision.

## II. APA CLAIMS

### A. Count 1 - FHFA

Plaintiffs allege in Count 1 that the FHFA exceeded its statutory authority by adopting the Third Amendment. Specifically, Plaintiffs allege that the FHFA acted in contravention of its statutory duty to rehabilitate Fannie Mae and Freddie Mac and its duty to preserve and conserve Fannie Mae's and Freddie Mac's assets. Plaintiffs allege also that the FHFA exceeded its statutory authority by acting to benefit taxpayers. Defendants seek dismissal of this claim as precluded by the limitation on judicial review set forth in § 4617(f).

This issue was addressed in *Perry Capital*, and this Court finds the District of Columbia Circuit's reasoning to be persuasive. As noted in *Perry Capital*, the "plain statutory text [of § 4617(f)] draws a sharp line in the sand against litigative interference – through judicial injunctions, declaratory judgments, or other equitable relief – with FHFA's statutorily permitted actions as conservator or receiver." *Perry Capital*, 848 F.3d at 1087. As explained by the District of Columbia Circuit, "adoption of the Third Amendment falls within FHFA's statutory conservatorship powers." *Id.* This is true because HERA "endows FHFA with extraordinarily broad

flexibility to carry out its role as conservator." *Id.* "Entirely absent from [HERA's] text is any mandate, command, or directive to build up capital for the financial benefit of [Fannie Mae's and Freddie Mac's] stockholders." *Id.* at 1088. To avoid the limitation of § 4617(f), Plaintiffs' burden "is to show that FHFA's actions were frolicking outside of statutory limits as a matter of law." *Id.* at 1093. For the reasons set forth in *Perry Capital*, the arguments asserted by Plaintiffs here – the same arguments asserted by the plaintiffs in *Perry Capital* – fail to demonstrate that the FHFA's conduct was outside the scope of its broad statutory authority as conservator. Therefore, Plaintiffs' APA claim against the FHFA is barred by § 4617(f).

### B. Counts 2 and 3 - Treasury

Plaintiffs allege that Treasury's conduct in connection with the Third Amendment exceeded its statutory authority under HERA and was arbitrary and capricious. As explained by the District of Columbia Circuit in *Perry Capital*, these claims are barred by § 4617(f). *See Perry Capital*, 848 F.3d at 1096-97. "Section 4617(f) also forecloses judicial relief that would 'affect' the exercise of FHFA's 'powers or functions' as conservator or receiver." *Id.* at 1096. Here, "the effect of any injunction or declaratory judgment aimed at Treasury's adoption of the Third Amendment would have just as direct and immediate an effect as if the injunction operated directly on FHFA." *Id.* "Accordingly, Section 4617(f)'s prohibition on

relief that 'affect[s] FHFA applies here because the requested injunction's operation would have exactly the same force and effect as enjoining FHFA directly." *Id.* Therefore, § 4617(f) bars Counts 2 and 3 of Plaintiffs' Complaint.

## III. CONSTITUTIONAL CLAIMS

The FHFA is governed by a Director who can be removed only for cause. *See* 12 U.S.C. § 4512(b)(2) ("The Director shall be appointed for a term of 5 years, unless removed before the end of such term for cause by the President"). Plaintiffs argue that this structure violates the constitutional separation of powers. Plaintiffs argue that, as a result, the FHFA is unconstitutional and the Third Amendment is invalid as entered into by an unconstitutional entity. The Court concludes that the for-cause removal provision for the FHFA's Director does not violate the United States Constitution.

Article II of the United States Constitution charges the President to "take Care that the Laws be faithfully executed." U.S. CONST. Art. II, § 3. The Constitution specifically defines the President's appointment power:

> He shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the supreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law: but the Congress may by law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.

U.S. CONST. Art. II, § 2, cl. 2.

The Constitution, however, "is conspicuously silent" regarding the President's removal authority. *See Consumer Fin. Prot. Bureau v. ITT Educ. Servs., Inc.*, __ F.3d __, 2015 WL 1013508, *7 (S.D. Ind. Mar. 6, 2015) (appeal dismissed). Nonetheless, the United States Supreme Court has held that "some degree of discretion in removing executive officers is inherent in the President's powers and must be protected from excessive legislative encroachment." *Id.* First, in *Myers v. United States*, 272 U.S. 52 (1926), the Supreme Court held that Congress was prohibited from unduly limiting the President's removal power.

In *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), the Supreme Court held that the President's removal power was not absolute with respect to removal of officers of federal agencies that are not "purely executive" but that, instead, engage in activities that are quasi-judicial, quasi-legislative, or otherwise not exclusively the execution and enforcement of the laws enacted by Congress. *See* 295 U.S. at 627-29.

Later, in *Morrison v. Olson*, 487 U.S. 654 (1988), the Supreme Court held that the Attorney General's appointment of an "independent counsel" did not unconstitutionally violate the President's appointment and removal powers. *See Morrison*, 487 U.S. at 691-92. The Supreme Court noted that the President retained

some control over the independent counsel through his control over the Attorney General, the President's at-will appointee. *See id.* at 692.

Most recently, in 2010, the Supreme Court noted that it previously held that "Congress can, under certain circumstances, create independent agencies run by principal officers appointed by the President, whom the President may not remove at will but only for good cause." *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 483 (2010) (citing *Humphrey's Executor*). At issue in *Free Enterprise* was a "for cause" requirement for the removal of commissioners of the Public Company Accounting Oversight Board, an entity under the Securities and Exchange Commission whose own commissioners could be removed only for cause. The Supreme Court held that this "second level of tenure protection changes the nature of the President's review." *Id.* at 496. The Supreme Court held this structure providing two levels of "for cause" removal protection to be unconstitutional. *See id.* at 498.

Viewed in light of this Supreme Court rubric, the structure of the FHFA does not violate the Constitution. As noted in *Morrison*, "the real question is whether the removal restrictions are of such a nature that they impede the President's ability to perform his constitutional duty." *Morrison*, 487 U.S. at 691. A "for cause" requirement for removal has been approved by the Supreme Court where, as here, the

agency's mission is not "purely executive." *See Humphrey's Executor*, 295 U.S. at 619, 632; *see also Consumer Fin. Prot. Bureau v. Morgan Drexen, Inc.*, 60 F. Supp. 3d 1082, 1087-88 (C.D. Cal. 2014); *Consumer Fin. Prot. Bureau v. ITT Educ. Servs., Inc.*, 2015 WL 1013508 at *9. Indeed, the challenged Third Amendment was adopted by the FHFA in its capacity as conservator of Fannie Mae and Freddie Mac, not as an executive enforcing the laws of the United States.

Plaintiffs in their Motion for Summary Judgment on Constitutional Claim rely primarily on *PHH Corp. v. Consumer Fin. Prot. Bureau*, 839 F.3d 1 (D.C. Cir. 2016), which held that the Consumer Financial Protection Bureau was unconstitutionally governed by a single Director removable only for cause. The District of Columbia Circuit has granted rehearing *en banc* and has vacated the panel's opinion on which Plaintiffs rely. Moreover, the panel's decision was based on the view that the single-Director structure of the CFPB was "novel" and that the independent counsel statute upheld in *Morrison* was a mistake. In addition to the CFPB and the FHFA at issue in this case, the Social Security Administration's Commissioner is a single agency head who is removable only for cause. *See* 42 U.S.C. § 902(a). Whether the independent counsel statute was wise or a mistake, it was upheld as constitutional by the Supreme Court in *Morrison*. As a result, the Court finds the reasoning of the panel decision in *PHH Corp.* to be unpersuasive even if it had not been vacated.

Plaintiffs argue that the single director structure is a "second layer" that renders the structure of the FHFA unconstitutional under *Free Enterprise*. The existence of a single director is not, however, a "second level of tenure protection" that is prohibited by *Free Enterprise*. Indeed, the existence of a single director rather than a board or commission offers no "tenure protection" at all. Additionally, the Supreme Court did not limit its decision in *Humphrey's Executor* to a multimember board rather than a single director, holding simply that a "for cause" removal provision for agencies that are not "purely executive" was not an unconstitutional violation of the separation of powers. The FHFA's removal provision, when viewed in light of the agency's overall structure and purpose, does not impede the President's ability to perform his constitutional duty to take care that the laws are faithfully executed. As a result, Plaintiffs' Motion for Summary Judgment on this constitutionality issue is denied and Defendants' Motion for Summary Judgment on this issue is granted.

## IV. <u>CONCLUSION AND ORDER</u>

Based on the foregoing, particularly the District of Columbia Circuit's well-reasoned decision in *Perry Capital*, the Court grants Defendants' Motions to Dismiss the APA claims as precluded by § 4617(f). Additionally, the Court concludes that the

removal for cause provision applicable to the FHFA Director is not unconstitutional. Accordingly, it is hereby

**ORDERED** that the Motion to Dismiss [Doc. # 23] filed by Defendants Federal Housing Finance Agency and Melvin L. Watt is **GRANTED**; the Motion to Dismiss [Doc. # 25] filed by the United States Department of Treasury ("Treasury") and Steven Mnuchin is **GRANTED**; Plaintiffs' Motion for Summary Judgment on Constitutional Claim [Doc. # 33] is **DENIED**; and the Cross-Motion for Summary Judgment on Constitutional Claim [Doc. # 35] filed by the FHFA and Watt is **GRANTED**.

The Court will issue a separate final order.

SIGNED at Houston, Texas, this 22nd day of **May, 2017.**

_____
NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE