IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **PATRICK J. COLLINS**, *et al.*, | § § § | |
| Plaintiffs, | § § § | |
| v. | § § | CIVIL ACTION NO. 4:16-CV-03113 |
| **FEDERAL HOUSING FINANCE AGENCY**, *et al.*, | § § § § | |
| Defendants. | § § § | |

**FHFA DEFENDANTS' RESPONSE TO
PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY**

The FHFA Defendants respectfully submit this response to Plaintiffs' Notice of Supplemental Authority (Doc. 91) regarding *Community Financial Services Association of America, Ltd. v. Consumer Financial Protection Bureau*, No. 21-50826, 2022 WL 11054082 (5th Cir. Oct. 19, 2022) ("*CFSA*"). Plaintiffs have the impact of the decision backwards: *CFSA* strongly supports FHFA's arguments for dismissing both the removal restriction counts and the Appropriations Clause counts of Plaintiffs' Amended Complaint.

**Removal Restriction Claims (Counts I, III, V, VI)**

*CFSA* removes any doubt that the proper disposition here is dismissal of Plaintiffs' counts seeking to force FHFA and Treasury to eliminate Treasury's liquidation preferences as a remedy for the unconstitutional removal restriction. *CFSA* distills from the Supreme Court's opinion in this case three requirements for proving harm: "(1) a substantiated desire by the President to remove the unconstitutionally insulated actor, (2) a perceived inability to remove the actor due to

the infirm provision, and (3) a nexus between the desire to remove and the challenged action taken by the insulated actor." *CFSA*, slip op. at 19. Plaintiffs satisfy none of these requirements.

*1. Substantiated desire to remove.* As set forth in FHFA's motion (FHFA MTD at 10, 21), the Amended Complaint is devoid of any allegation that former President Trump ever expressed displeasure with any action by FHFA's former Director Watt or suggested, let alone asserted, that he wished to remove Director Watt while in office. Plaintiffs cannot backfill this requirement with a *post hoc* letter that they represent former President Trump signed well after leaving office in a transparent effort to influence pending litigation.

*2. Perceived inability to remove.* As Treasury has discussed (Treasury MTD at 13-14), the Trump Administration never "perceived" any "inability" to remove former Director Watt; on the contrary, the Administration consistently took the position the for-cause provision was unconstitutional and unenforceable, a position upheld in this very case by a Fifth Circuit panel early in the Administration, *Collins v. Mnuchin*, 896 F.3d 640 (5th Cir. 2018), and later by the Supreme Court.

*3. Nexus between desire to remove and challenged action.* Assuming, counterfactually, a substantiated contemporaneous desire on the former President's part to remove former Director Watt, nothing in the Amended Complaint suggests any such desire was related to any action Plaintiffs challenge in this case. As a threshold matter, Plaintiffs cannot meet this requirement because their removal restriction counts do not challenge any FHFA action at all, only inaction—failure to launch new economic policies to enrich Plaintiffs at Treasury's expense. FHFA MTD at 14-16.

Even if *in*action could be treated as equally cognizable for these purposes (which it cannot), there is absolutely no nexus. Plaintiffs do not plausibly plead that former President Trump ever embraced elimination of the liquidation preferences as a policy goal—only that very late in the Administration, long past the relevant time for any "nexus" with a "desire" to remove former

2

Director Watt, modification of the liquidation preferences was mentioned in passing as a part of a long, open-ended list of possible PSPA reform options that would require much further study before any determination was made. FHFA MTD at 19-20. Then the Administration acted to vastly *expand* the liquidation preferences. *Id.* at 20-21. "Without [the requisite] showing" of nexus, Plaintiffs' claims anomalously seek to "put themselves in a better place than otherwise warranted, by challenging [the failure to eliminate the liquidation preferences] with which the President agreed, or of which he had no awareness at all." *CFSA*, slip op. at 19 (citing *Collins v. Yellen*, 141 S. Ct. 1761, 1802 (2021) (Kagan, J., concurring in part)).[1]

**Appropriations Clause Claims (Counts II, IV)**

*CFSA*'s Appropriations Clause analysis is wrong as to CFPB, but even so, makes clear that the opposite conclusion would apply to FHFA. *CFSA* therefore weighs in favor of—not against—dismissing the Appropriations Clause counts against FHFA in this case.

As a threshold matter, FHFA strongly disagrees with *CFSA*'s analysis of the meaning of the Appropriations Clause and its application of that analysis to CFPB. It is undisputed that every other court to consider the issue has reached the opposite outcome, and the *CFSA* panel's decision is subject to CFPB's right to petition for rehearing *en banc* or for certiorari.[2]

However, even if the panel decision stands, it supports dismissal of Plaintiffs'

---

[1] The alleged *post hoc* letter by former President Trump bears no credence whatsoever. But even if the Court were to consider it, it would hinder rather than help Plaintiffs in meeting the nexus requirement. The comment about removal in the letter alludes to general negative views about former Director Watt and his political party, not any disagreement with or opposition to any action (or inaction) by former Director Watt relating to Treasury's liquidation preferences.

[2] Indeed, under the Fifth Circuit rules, the mere granting of rehearing *en banc* would mean that the "the panel decision is vacated and of no precedential value." *United States v. Pineda-Ortuno*, 952 F.2d 98, 102 (5th Cir. 1992); *see* 5th Cir. R. 41.3 (grant of rehearing *en banc* automatically "vacates the panel opinion and judgment of the court and stays the mandate").

Appropriations Clause claims against FHFA in this case. The *CFSA* panel's conclusion—which addressed a challenge timely brought and properly before the court (unlike here)—rested on what it saw as a uniquely "staggering amalgam of legislative, judicial, and executive power" vested in CFPB. *CFSA*, slip op. at 29 (quote marks omitted); *see also id.* at 32 (CFPB "acts as a mini legislature, prosecutor, and court, responsible for creating substantive rules for a wide swath of industries, prosecuting violations, and levying knee-buckling penalties against private citizens") (quote marks omitted). That is why the *CFSA* panel expressly rejected comparisons between CFPB, on the one hand, and FHFA and other safety-and-soundness regulators, on the other, as "mix[ing] apples with oranges[,] [o]r, more accurately with a grapefruit." *CFSA*, slip op. at 35. The panel found FHFA and other safety-and-soundness regulators do not "wield[] enforcement or regulatory authority remotely comparable to the authority the [Bureau] may exercise throughout the economy." *Id.* (quote marks omitted); *see also* FHFA MTD at 24-25 (addressing distinctions).

FHFA's funding mechanism is also materially different from CFPB's. As explained in FHFA's motion, FHFA cannot "simply requisition[]" money from another federal agency, *cf. CFSA*, slip op. at 29, but rather charges the entities it regulates with assessments, just like the Federal Reserve Board does. FHFA MTD at 25. FHFA's funding mechanism is therefore much more analogous to the Federal Reserve Board, whose constitutionality the *CFSA* panel did not question. The fact that the regulated entities that FHFA assesses for funds are "outside the appropriations process" (Notice at 2-3) is the same as the Federal Reserve Board and other safety-and-soundness regulators, which assess private financial institutions equally outside the appropriations process. FHFA's enabling statute also does not contain the provision, which the *CFSA* panel found constitutionally objectionable, that "funds derived . . . pursuant to this subsection shall not be subject to review by the Committees on Appropriations of the House of Representatives and the

4

Senate." *CFSA*, slip op. at 31 (citing 12 U.S.C. § 5497(a)(2)(C)). Plaintiffs' repetition of their hyperbole that "FHFA can collect an *unlimited* amount of funding" (Notice at 3) is belied by the express statutory limitation to FHFA's reasonable costs and expenses. *See* FHFA MTD Reply at 10 n.9; 12 U.S.C. § 4516(a), (d).

Finally, the *CFSA* panel's remedial analysis makes clear that vacating the Third Amendment or the entire PSPAs would not be a proper remedy for any possible constitutional issue with FHFA's funding mechanism anyway. *CFSA* rejects "*per se* invalidation" and calls for examination of whether the challenged funding mechanism actually "enable[s] the exercise of [the relevant] power," *i.e.*, a "linear nexus between the infirm provision . . . and the challenged action[.]" *CFSA*, slip op. at 37-38. No such linear nexus exists between FHFA's funding mechanism and the Third Amendment, because the funds FHFA collects through assessments on regulated entities are not the source for the complained-of dividends to Treasury. *See* FHFA MTD at 25.

Respectfully submitted,

Dated: November 1, 2022

   /s/ *Robert J. Katerberg*
Robert J. Katerberg (admitted *pro hac vice*)
Howard N. Cayne (admitted *pro hac vice*)
Asim Varma (admitted *pro hac vice*)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, DC 20001
(202) 942-5000
robert.katerberg@arnoldporter.com

Christopher M. Odell
Texas Bar No. 24037205
Southern District I.D. No. 33677
ARNOLD & PORTER KAYE SCHOLER LLP
700 Louisiana St. #4000, Houston, TX 77002
(713) 576-2400
christopher.odell@arnoldporter.com

*Counsel for FHFA Defendants*